DAVID M. GIVEN (State Bar No. 142375)
BRIAN S. CONLON (State Bar No. 303456)
NINA C. POUGET (State Bar No. 332958)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA   94129
Telephone:  415-398-0900
Fax:              415-398-0911
Email: dmg@phillaw.com
          bsc@phillaw.com
          ncp@phillaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OM RECORDS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>OM DEVELOPPEMENT, SAS; OLYMPIQUE DE MARSEILLE, SA; BMG RIGHTS MANAGEMENT, GMBH; BMG PRODUCTION MUSIC, INC.,<br><br>Defendants. | Case No: 3:23-cv-04506<br><br>**COMPLAINT FOR UNFAIR COMPETITION UNDER FEDERAL AND STATE STATUTORY LAW; INTENTIONAL TRADEMARK INFRINGEMENT; AND INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is an action for unfair competition and intentional trademark infringement and interference arising from the concerted conduct of one of the largest music concerns in the world acting together with the Marseille, France (Series A) soccer team to launch and operate a music industry venture using the exact same name as one used in worldwide commerce for almost 30 years.

1

**COMPLAINT FOR UNFAIR COMPETITION, ETC.**

2. Plaintiff, along with its predecessor entity, has owned and operated from this District the independent record label Om Records, doing business in the U.S. and around the world without interruption for the past 29+ years.

3. According to public reporting, in or around Sept. 2020, after years of discussions between the U.S.-based owner of the French soccer team and a U.S.-based executive with the music industry conglomerate, the two entities publicly announced their "partnership" in a new record label, calling it "OM Records."

4. This announcement and subsequent advertising, posting, and distribution of recorded music using the OM RECORDS moniker through online channels like YouTube and Apple Music, as well as via social media postings on platforms like Twitter, Instagram, and Facebook, all with their principal place of business in this District and accessible to consumers throughout the U.S., immediately caused actual confusion in the marketplace, interfering with Plaintiff's business, and causing consumers to wonder whether the two record labels were related. For the avoidance of doubt, they are not.

5. The partners in their "OM Records" venture knew or should have known of the existence of the long-standing Om Records. This is because (A) their personnel acknowledged as much; (B) the music industry conglomerate had a decade-plus relationship with Plaintiff *administering its music* worldwide and therefore knew it did business as Om Records here and around the world; and (C) a simple Google search would have shown that Om Records already existed and had operated for decades.

6. Indeed, after learning of the venture's press release of the day before, a principal in and founder of Om Records reached out in writing to his contact at the music conglomerate's U.S. subsidiary and alerted him to the situation of the overlapping names. The very next day (a Saturday!), the venture ran to the Institut National de la Propriete Industrielle ("INPI")—the French equivalent of the U.S. Trademark Office—and registered the mark OM RECORDS in that country. (The contact reverted to Om Records' principal the following Monday.) By that action the venture purported to

**COMPLAINT FOR UNFAIR COMPETITION, ETC.**

acquire rights via the "first to register first in right" rule under French law. It then used that registration to assert rights here in the U.S., making application for registration of the Om Records name and mark with the U.S. Trademark Office.

7.     But the European Union Intellectual Property Office (the "EUIPO") has since adjudicated that action to be in bad faith ("en mauvaise foi") and nullified the venture's registration in its entirety, awarding fees to Om Records. A similar outcome was obtained in the U.K., again with an award of fees to Om Records.

8.     By this lawsuit, Plaintiff seeks redress for the injury caused by Defendants' intentional conduct.

## THE PARTIES

9.     Plaintiff OM RECORDS, LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California. It and its predecessor entity have owned and operated Om Records since 1995, known worldwide for its electronic, dance, and hip-hop music releases. Plaintiff has also produced or participated in live events employing the label's name throughout the world. Plaintiff will be referred to hereinafter variously as "Om Records" or "Plaintiff."

10.     Defendant OM DEVELOPPEMENT, SAS, is a French company which has done business in the U.S. and in this District as "OM Records." For example, OM Developpement sought trademark registration with the U.S. Trademark Office for OM RECORDS (Application No. 79313619) as part of a design mark. In addition, during the previous pertinent period, OM Developpement (by and through one of its two partners) delivered recorded music to various music streaming platforms located in this District (like YouTube and Apple Music) for distribution throughout the world under the moniker OM Records. It also created social media accounts with Twitter, Instagram, and Facebook, all entities located in this District, using the "OM RECORDS" moniker. According to its own public statements, OM Developpement (referred to hereinafter as "OM Records") is a "partnership" of the other defendants identified below.

11. Defendant OLYMPIQUE DE MARSEILLE, SA, is a French public limited company. It owns and operates the French football club Olympique de Marseille and related ventures. It is, in turn, owned and controlled by a U.S. citizen who, on information and belief, resides at least part-time in Los Angeles, California.

12. Defendant BMG RIGHTS MANAGEMENT, GMBH, is a German limited liability company, which on information and belief does business in the U.S. and in this District. For example, BMG RIGHTS MANAGEMENT is parent to defendant BMG PRODUCTION MUSIC, INC., a New York corporation licensed to do business in this state with a substantial physical presence in Los Angeles County. That entity, in turn, operates a multi-billion dollar music industry business in the U.S. at the direction of its parent, with whom it shares officers and directors; in addition, on information and belief, it also employs the executive vice president who, along with the football club's owner, was responsible for conceiving and launching OM Records. These two entities will be referred to collectively as "BMG." On information and belief, BMG partnered with OLYMPIQUE DE MARSEILLE to create "OM Records." The four named defendants will be referred to collectively as "Defendants."

13. At all relevant times, and as pertinent here, Defendants have acted in concert with one another in the acts described hereinbelow, and have aided and abetted one another in the unlawful conduct at issue here.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 & 1338, and has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over Defendants and venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b) and (c) in that, on information and belief, Defendants regularly transact business in this District or have committed the tortious acts complained of herein at least in part within this District, which acts have caused and will cause injury to Om Records in this District.

# FACTUAL ALLEGATIONS

**A.  Om Records Operates a Record Label from San Francisco for Almost 30 Years Using the OM RECORDS Name**

16.  Since 1995 Om Records has used the "OM RECORDS" name uninterrupted in commerce throughout the U.S., Canada, Europe and various other territories throughout the world.

17.  Om Records specializes in the recording and worldwide distribution of electronic dance music, and other genres, including hip-hop, and since 1995 has produced or participated in hundreds of festivals and branded live events throughout the U.S. and Europe, including in Los Angeles, Seattle, Miami, Chicago, San Francisco, New York, Ibiza, Barcelona, London, and Paris, attended by hundreds of thousands of people. Its roster includes such internationally renowned artists as Groove Armada, Underworld, Dirty Vegas, Bassnectar, Kaskade, and People Under the Stairs.

18.  Om Records has a discography of over 700 releases, all distributed worldwide. (See https://www.om-records.com/discogs.) It also sells Om Records branded merchandise on its website. (See https://store.om-records.com/merch).

19.  In 2020, Om Records released *Om Records – 25 Years*, a compilation album, celebrating its 25th Anniversary. That release and the label's history were covered by Billboard (https://www.billboard.com/music/music-news/om-records-label-spotlight-9439717/) and Forbes (https://www.forbes.com/sites/lisakocay/2020/07/10/exclusive-track-by-track-om-records--25-years-anniversary-compilation/?sh=54383c5073ce), among others.

20.  As part of its operations, Om Records has maintained a YouTube channel since 2006 (https://www.youtube.com/omrecords) with over 30,000 subscribers, a Facebook page since 2007 (https://www.facebook.com/omrecords) with over 90,000 followers, a Twitter account since 2009 (@OmRecords) with over 13,500 followers, and an Instagram account since 2012 (@omrecords) with over 3,500 followers. It posts regularly on all these platforms.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

21.     Through its activities, Om Records has generated goodwill in its OM RECORDS name and related marks and logo in the UK and the EU but especially in the U.S. Om Records therefore has common law trademark rights in the foregoing based on its priority of use in the U.S. and many other territories, dating back to 1995.

22.     To further protect its interests, Om Records applied for federal registration of OM RECORDS. The U.S. Trademark Office blocked that application (Serial No. 90254521) as a result of Defendants' actions as described below.

**B.     Defendants Knew All About Om Records before Deciding to Adopt the Identical Record Label Name**

23.     According to their own public statements, Defendants' venture to create a record label began three years before its formation. According to BMG's U.S.-based Executive Vice President of Repertoire and Marketing, the venture started when Olympique de Marseille's American owner approached him about a partnership between the football club and BMG to create a new record label.

24.     At that time, Om Records had been operating for well over 20 years and had the same robust online and international presence it continues to have today.

25.     In fact, from about 2011 to 2018 (according to Defendants' announced timeline, coinciding with the period Olympique de Marseille and BMG were discussing their partnership in the music business), BMG served as Om Records' song rights administrator throughout the world, taking over from a predecessor, which handled those rights for the previous nine years and which BMG bought in 2011. Each of the quarterly account statements rendered by BMG to Plaintiff identified "Om Records" as the account holder.

26.     On Sept. 24, 2020, Defendants announced their partnership to create a new record label called "OM Records." Defendants distributed a press release on the subject in French (https://www.om.fr/fr/actualites/4808/le-club/42014-lom-et-bmg-lancent-le-label-om-records) and in English (https://www.om.fr/en/news/4808/club/42014-om-and-bmg-officially-launch-new-label-om-records), and the newly formed "partnership" (as Defendants described it) posted their news on new Twitter (@om_records), Instagram

**COMPLAINT FOR UNFAIR COMPETITION, ETC.**

(@om_records), and Facebook (@omrecordsfr) user accounts. Less than a month after the article reporting on Om Records' 25th Anniversary release, Billboard ran an article on the "launch of OM Records" (https://www.billboard.com/pro/bmg-record-label-french-soccer-club-olympique-de-marseille/) which was republished by Defendants.

27. The following day, around midday, one of Om Records' founders emailed his U.S.-based BMG contact, notifying him of the conflict between Om Records' label name and this new OM Records venture and asking if he had a contact he could put him in touch with (highlighting added):

> ---------- Forwarded message ----------
> From: **Chris Smith** ███████████>
> Date: **Fri, Sep 25, 2020 at 12:20 PM**
> Subject: Hello from Om Records :)
> To: Hirshland, David, BMG ███████@bmg.com>
>
> Hello David! I hope all is well with you!
>
> I wanted to ask if you possibly have a contact for BMG France? They just launched a new label called Om Records, which is already causing us big headaches.
>
> https://www.digitalmusicnews.com/2020/09/24/bmg-olympique-de-arseille-label/
>
> If you can steer us to someone at BMG to talk to I'd be grateful.
>
> Thank you! Chris
>
> --
> **CHRISTOPHER SMITH**
> FOUNDER:
> OM RECORDS, UP ALL NIGHT
> MONARCH MANAGEMENT GROUP,

28. The very next day, a Saturday, and less than 24 hours after Om Records' email inquiry, Defendants applied for trademark registration of the "OM RECORDS" name and logo in France. Defendants' race to file their registration is critical because of France's "first to register, first in right" rule. Needless to say, Defendants wasted no time in doing so.

29. The following Monday, Sept. 28th, an email response to Om Records was forthcoming. It consisted of a forward of an email from a BMG executive in France sent the previous Friday, shortly after Om Records' original email inquiry. In that email, the BMG executive (later identified as General Manager of OM Records) acknowledged that

Defendants had done their research and knew of the existence of Om Records, but that executive had "no idea this 'American OM records' was a BMG client" and apologized for putting his U.S. counterpart "in a tricky situation;" nonetheless, Defendants had decided to use the same name as BMG's client, and would continue to do so (highlighting added):

---------- Forwarded message ----------
From: Hirshland, David, BMG <███████@bmg.com>
Date: Mon, Sep 28, 2020 at 2:51 PM
Subject: FW: Hello from Om Records :)
To: Chris Smith <███████████>

Chris,

As promised, here's the response.

- David Hirshland

From: Gazaignes, Sylvain, BMG <███████@bmg.com>
Sent: Friday, September 25, 2020 2:36 PM
To: Hirshland, David, BMG <███████@bmg.com>
Subject: Re: Hello from Om Records :)

Hi David,

Great to hear from you. Hope we'll meet in Paris when you come, indeed !

Regarding "OM Records" :

A/ It's a brand/trademark that belongs to OM, Olympique de Marseille. Per our contract, we are allowed to use it, but it belongs to them.

B/ When they launched the process to register it worldwide, they did the research, found out about this US trademark that had expired and was to be used in conjunction with a specific logo.

> As the OM RECORDS trademark had expired in the USA, and the "French" logo is totally different, they decided to proceed, made the decision to use it and register it.
>
> Obvisouly, I had no idea this "American OM records" was a BMG client and I'm sorry if that puts you in a tricky situation. But OM have done their legal homework and acted legally there.
>
> Let me know if there's anything else you need,
>
> Best,
>
> Sylvain



Sylvain Gazaignes | General Manager
P +33 1 53 21 07 67 | M +33 6 46 37 74 20
www.bmg.com | Facebook | Twitter
BMG, 49/51 rue Vivienne, 75002, Paris, France

### C. Defendants Accelerate Their Commercial Efforts Using the OM RECORDS Name

30. Om Records thereafter sent a cease and desist letter via counsel demanding that Defendants stop using the OM RECORDS name as well as its confusingly similar Instagram and Twitter handles.

31. Rather than stop, Defendants accelerated their use of the OM RECORDS name. For example, Defendants began to sell and stream its music to customers via streaming platforms and physical releases using the OM RECORDS name. Together with their active social media presence, Defendants offered their recorded music using the OM RECORDS name and mark for sale or stream on various internet music platforms, including YouTube, Spotify, Deezer, iTunes Store, Apple Music, and Amazon Music, all available to the U.S. consuming public and many of which emanate from entities located in this District.

32. By way of further example, Defendants took the additional step of filing for trademark registration with the U.S. Trademark Office of its logo and associated word mark OM RECORDS. The Trademark Office immediately recognized the potential

for consumer confusion in the use of the same name by two different sources for recorded music, and shortly thereafter suspended Om Records' earlier trademark registration as a result of Defendants' preemptive French filing, causing it further harm.

33. That harm compounded when, in the same month of Defendants' U.S. registration, in response to action by Olympique de Marseille, some of its fans called for a boycott of the team and started a Twitter hashtag "#boycottOMRecords," mis-tagging Om Records in their posts, thereby disrupting its business and causing further actual confusion among its customers and the public.

34. After several additional months of actual consumer confusion over the existence of two OM RECORDS record labels, Om Records sent additional cease and desist letters and takedown notices to Twitter and Facebook and Instagram (both now, Meta) notifying them of its rights and prior use of the OM RECORDS name and mark, and asking that they remove the @omrecordsfr Facebook profile, the @OM_Records Instagram profile, and the @OM_Records Twitter handle, as well as all offending posts. On information and belief, Defendants opposed those communications and, as a result, these social media platforms declined Om Records' takedown request.

35. Meanwhile, Defendants launched music videos on its YouTube channel, accessible in the U.S. and elsewhere, displaying the OM RECORDS name. One such video which flashes the OM RECORDS name and provides a link for sale using that name which has, to date, garnered over three million views.

36. Om Records later sent a cease and desist letter and takedown notice to YouTube advising it of its rights and asking that it remove the OM Records YouTube channel and remove any offending videos. On information and belief, Defendants opposed that communication and, as a result, YouTube responded that it could not "further process [the] complaint" and declined to remove the channel or content.

37. Defendants continued to supply YouTube with video content directly infringing Om Records' rights up to and including on or about Nov. 19, 2021.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA   94129
Telephone:  (415) 398-0900

38. On or about Apr. 5, 2023, in an adversarial proceeding in which Defendants appeared, the U.K. Intellectual Property Office adjudicated that Om Records had rights in the OM RECORDS name and associated mark and logo superior to Defendants. Defendants did not appeal that judgment, which is now final.

39. On or about Jun. 21, 2023, in an adversarial proceeding in which Defendants appeared, the EUIPO adjudicated that Om Records had rights in the OM RECORDS name and associated mark and logo superior to Defendants, finding among other things that Defendants had acted in bad faith in filing for a trademark registration in France knowing of Om Records' existence. Defendants have appealed that judgment.

40. In both these two proceedings, Om Records was awarded its costs and fees, which to date remain unpaid.

41. Around this time the U.S. Trademark Office published Defendants' trademark application for comment. Plaintiff subsequently filed an opposition to that application. Defendants have failed to respond, and the Trademark Office has since issued a notice of default.

## COUNT I

### (Unfair Competition Under Federal Law, 15 U.S.C. § 1125(a))

### ("Section 43(a) of the Lanham Act")

(Against Defendants)

42. Plaintiff re-alleges and incorporates the above paragraphs by reference as fully set forth herein.

43. As a result of the use described above, Plaintiff has obtained and owns common law trademark rights in the name OM RECORDS and its associated marks and logos. Over its nearly 29 years of use, the name OM RECORDS has acquired a secondary meaning associated with Plaintiff.

44. Defendants' use of that name in the manner described above without Plaintiff's consent constitutes direct or indirect unfair competition in violation of Section 43(a) of the Lanham Act.

45. Defendants' use of that name is likely to cause and has caused confusion among ordinary customers as to the source, sponsorship, affiliation, or approval of Plaintiff's goods and services, and vice versa.

46. Defendants' conduct has caused Plaintiff reputational, economic and other damage in an amount according to proof at trial.

47. Defendants knew, or should have known, of Plaintiff's use of and corresponding rights in the OM RECORDS name. Defendants' use of the identical name in the manner it has constitutes willful infringement of Plaintiff's rights. Defendants engaged in the above-complained conduct knowingly, willfully, and in bad faith, rendering this case "exceptional" and justifying an award of treble damages and attorney fees under the Lanham Act.

## COUNT II

### (Common Law Trademark Infringement under California Law)

(Against All Defendants)

48. Plaintiff re-alleges and incorporates the above paragraphs by reference as fully set forth herein.

49. As a result of the use described above, Plaintiff has obtained and owns common law trademark rights in the name OM RECORDS and its associated marks and logos.

50. Defendants' use of that name in the manner described above constitutes direct or indirect unfair competition in violation of California common law.

51. Defendants' conduct has caused Plaintiff reputational, economic and other damage in an amount according to proof at trial.

52. Defendants' conduct was willful, intentional, malicious, fraudulent, oppressive, or in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be proven at trial.

## COUNT III

**(Statutory Unfair Competition, Cal. Bus. & Prof. Code § 17200)**

(Against All Defendants)

53. Plaintiff re-alleges and incorporates the above paragraphs by reference as fully set forth herein.

54. Defendants have engaged in unlawful and unfair business acts or practices in violation of California Bus. & Prof. Code § 17200.

55. Defendants' acts, described above, constitute willful and intentional violation of Cal. Bus. & Prof. Code § 17200.

56. Defendants' acts are the actual and proximate cause of Plaintiff's injury and damage.

57. By reason of the foregoing, Plaintiff is entitled to restitution of all amounts received by Defendants as a result of their unlawful and unfair conduct.

## COUNT IV

**Intentional Interference with Prospective Economic Relations**

(Against All Defendants)

58. Plaintiff re-alleges and incorporates the above paragraphs by reference as fully set forth herein.

59. By their actions as described above, Defendants intentionally interfered with the economic relationship between Plaintiff and its customers and prospective consumers.

60. Plaintiff and its customers and prospective consumers were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff.

61. Defendants knew Plaintiff had an economic relationship to its customers and prospective consumers.

62. By engaging in the conduct described herein, Defendants knew that they would disrupt the relationship between Plaintiff and its customers and consumers or were substantially certain their actions would disrupt that relationship.

63. The economic relationship between Plaintiff and its customers and prospective consumers was disrupted by the actions of the Defendants described herein, as it created confusion amongst those consumers and uncertainty about the nature and origin of Plaintiff's goods and services.

64. Plaintiff was harmed by Defendants' conduct alleged herein.

65. Defendants' conduct was willful, intentional, malicious, fraudulent, oppressive, or in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be proven at trial.

66. As to all counts stated herein, damages may not be a fully adequate remedy to the extent Defendants' conduct is ongoing. Plaintiff is therefore further entitled to injunctive relief to prevent any offending conduct from continuing.

## DEMAND FOR JURY TRIAL

67. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all claims asserted in this complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and relief against Defendants, as follows:

(a) For a preliminary and permanent injunction against Defendants, enjoining them and their officers, agents, employees, representatives, and others acting by, through or on Defendants behalf from:

    i. Using the name "OM RECORDS" or any confusingly similar variation thereof, as any portion of a trademark or trade name in connection with the sale of record label goods or services;

    ii. Using the name OM RECORDS or any name containing the name "OM RECORDS" or any name that is confusingly similar to "OM RECORDS" to describe goods or services, other than Plaintiff's goods or services, on social media, or multi-media distribution platforms accessible in the U.S., U.K. or E.U. including, but not

limited to Facebook, Instagram, Twitter, YouTube, Spotify, Apple Music, Amazon, Amazon Music, iTunes, and Deezer.

    iii. Using the name OM RECORDS or any name containing the name "OM RECORDS" or any name that is confusingly similar to "OM RECORDS" as a profile name, handle, identifier, channel name, or any other designation on social media, or multi-media distribution platforms accessible in the U.S., U.K. or E.U. including, but not limited to Facebook, Instagram, Twitter, YouTube, Spotify, Apple Music, Amazon, Amazon Music, iTunes, and Deezer.

    iv. Registering or applying to register any trademark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the OM RECORDS name or any other name that infringes or is likely to be confused with Plaintiff's OM RECORDS trademark; or

    v. Inducing, aiding, or abetting anyone else doing any of the above.

(b) For an order requiring that Defendants take any actions as may be directed by this Court for the purpose of attempting to remedy and alleviate any consumer confusion or any loss of goodwill suffered by Plaintiff as a result of their actions, including:

    i. Advertising and promoting Defendants' cessation of use of the OM RECORDS name with at least as much effort and resources as have been expended or deployed to date by Defendants (or by anyone acting in concert or coordination with Defendants) in advertising and promoting the name OM RECORDS for Defendants' record label;

    ii. Establishing a fund in an amount equal to the value of any new advertising or promotional efforts (paid or unpaid) in which Defendants may engage from the date of service of this Complaint

forward. The fund will be accessible to Plaintiff for use in corrective advertising unless Defendants immediately halt any advertising or promotional efforts until this case has been fully resolved.

    (c)    For an order enjoining registration of the mark subject of U.S. Application Serial No. 79212619.

    (d)    That in accordance with 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve on Plaintiff, no later than 30 days after receiving service of said Order, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the Order;

    (e)    That in accordance with 15 U.S.C. § 1117(a), Defendants be ordered to reimburse Plaintiff for the costs of this action and for any reasonable attorney's fees incurred as a result of Defendants' unlawful activities.

    (f)    For entry of a declaratory judgment that Plaintiff owns exclusive rights to the OM RECORDS name as it pertains to record label goods and services in the U.S.;

    (g)    For actual, compensatory, incidental, and consequential damages in an amount to be determined at trial;

    (h)    Restitution for any amounts unlawfully or unfairly received as a result of Defendants' conduct;

    (i)    That Plaintiff be awarded both pre-judgment and post-judgment interest;

    (j)    For punitive and exemplary damages; and

    (k)    For all such other and further relief as the Court may deem just, proper, and equitable.

Dated: August 31, 2023                    Respectfully submitted,

                                          PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP

                                          By <u>/s/ David M. Given</u>
                                              David M. Given
                                              Brian S. Conlon
                                              Nina C. Pouget
                                              Attorneys for Plaintiff

**COMPLAINT FOR UNFAIR COMPETITION, ETC.**