United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OM RECORDS, LLC,

        Plaintiff,

  v.

OM DEVELOPPEMENT, SAS, et al.,

        Defendants.

Case No.  23-cv-04506-JSW


**ORDER DEFERING RULING ON DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION; ORDERING LIMITED JURISDICTIONAL DISCOVERY; GRANTING THE BMG DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; DENYING THE OM DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; AND GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION TO FILE MATERIAL UNDER SEAL**

Re: Dkt. Nos. 39, 40, 47

Now before the Court is a group of related motions.  Defendants OM Developpement, SAS and Olympique de Marseille, SASP (together, the "OM Defendants") and BMG Rights Management (France), SARL ("BMG France" and, together, the "French Defendants") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The French Defendants and BMG Rights Management (US) LLC ("BMG US," and, together with BMG France, the "BMG Defendants") further move to dismiss the First Amended Complaint ("FAC") for forum non conveniens and failure to state a claim under Rule 12(b)(6).

Plaintiff Om Records, LLC ("Plaintiff") has filed an administrative motion to seal portions of its opposition to Defendants' motions to dismiss and, as part of its opposition, seeks permission to conduct jurisdictional discovery.

The Court has considered the parties' papers, relevant legal authority, and the record in the

case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  The Court HEREBY GRANTS, IN PART, and DENIES, IN PART, the pending motions.

## BACKGROUND

**A.    Complaint Allegations.[1]**

Plaintiff has owned and operated Om Records since 1995.  (Dkt. No. 10, FAC, ¶ 9.)  Om Records is known worldwide for its electronic, dance, and hip-hop music releases.  (*Id.*)  BMG US has served as Plaintiff's song rights administrator since 2011.  (*Id.* ¶ 24.)

BMG France and Olympique de Marseille launched the "OM Records" label from Marseille, France on September 24, 2020.  (*Id.* ¶ 25.)  BMG France and Olympique de Marseille also created Twitter (now known as "X") and Instagram accounts with the handle "@om_records" and a Facebook account with the handle "@omrecordsfr."  (*Id.*)  Defendants issued a press release on the Olympique de Marseille website in both French and English.  (*Id.*)  *Billboard* magazine ran an article on the "launch of OM Records."  (*Id.*)

Defendants used the name "OM Records" to sell and stream music to customers via YouTube, Spotify, Deezer, iTunes Store, Apple Music, and Amazon Music.  (*Id.* ¶ 30.)  The recordings and videos were available to consumers within the United States and around the world.  (*Id.* ¶¶ 30, 34.)

On September 25, 2020, Plaintiff reached out to BMG US regarding the launch of OM Records.  (*Id.* ¶ 26.)  Plaintiff explained that the label name had "caused headaches" for Plaintiff's business.  (*Id.*)  Indeed, consumers later tagged accounts for Plaintiff's Om Records label when calling for a boycott of Defendants' OM Records label online.  (*Id.* ¶ 32.)

The next day, Olympique de Marseille registered a mark with the French trademark office consisting of the words "OM Records" and a logo.  (*Id.* ¶ 27.)  In June 2023, the European Union Intellectual Property Office nullified the French mark because it was registered in bad faith.  (*Id.*

---

[1] The facts in this section are drawn from the allegations in Plaintiff's FAC, as the Court must construe all well-pleaded facts as true for purposes of the motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  As explained below, additional or controverted allegations will be discussed with regard to Defendants' motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

United States District Court
Northern District of California

1     ¶¶ 7, 38.)

2          Some or all of the Defendants also used or registered the "OM Records" mark with the

3     U.K. Intellectual Property Office.  (*Id.* ¶ 37.)  Plaintiff contested Defendants' use of the name and

4     mark and prevailed with a finding that its rights were superior to Defendants'.  (*Id.*)

5          Defendants filed for trademark registration with the U.S. Trademark Office of the OM

6     Records name and logo.  (*Id.* ¶ 31.)  According to an email forwarded to Plaintiff from a BMG

7     France officer to a BMG US correspondent, the OM Defendants were aware of Plaintiff's label at

8     the time they filed for registration in the United States.  (*Id.* ¶ 28.)  Plaintiff filed an opposition to

9     the trademark registration application, and Defendants failed to respond.  (*Id.* ¶ 40.)  The U.S.

10    Trademark Office thus issued a notice of default.  (*Id.*)

11         Based on the foregoing conduct, Plaintiff brings four claims for relief: (1) unfair

12    competition under Section 43(a) of the Lanham Act; (2) common law trademark infringement

13    under California law; (3) unfair competition under California Business and Professions Code

14    section 17200 (commonly known as California's "Unfair Competition Law," and, hereinafter,

15    "UCL"); and (4) intentional interference with prospective economic relations.

16    **B.     Jurisdictional Allegations.[2]**

17         Plaintiff is a California limited liability company headquartered in San Francisco.  (FAC ¶

18    9.)  Since 1995, Plaintiff has participated in or produced hundreds of festivals and branded live

19    events throughout the United States and Europe, included in Los Angeles, Seattle, Miami,

20    Chicago, San Francisco, New York, Ibiza, Barcelona, London, and Paris.  (*Id.* ¶ 15.)  Plaintiff's

21    discography is distributed worldwide, and it sells "Om Records" brand merchandise on its

22    website.  (*Id.* ¶ 17.)

23         BMG US is a Delaware limited liability company with a substantial presence in Los

24    Angeles County.  (*Id.* ¶ 11.)  BMG US does not deny that it is subject to personal jurisdiction in

25    this Court.

26

27    _____

28    [2] The following facts are taken from the FAC as well as affidavits and documentary evidence
      submitted in support of, and in opposition to, the French Defendants' motions to dismiss for lack
      of personal jurisdiction.

United States District Court
Northern District of California

1    BMG France is a French limited liability company headquartered in Paris, France, where

2    all of its executive management and employees are based.  (Dkt. No. 40-1, Hindermeyer-Cayez

3    Decl., ¶ 2.)  BMG France is wholly owned by a German corporation.  (*Id.* ¶ 3.)  It does not

4    conduct business in California or the United States; have an agent for service of process in the

5    United States; advertise or solicit in California or the United States; possess a bank account in

6    California or the United States; own, possess, or use real property in California or the United

7    States; or pay taxes to California or the United States.  (*Id.* ¶¶ 6-11.)  Instead, BMG France wholly

8    operates in France.  (*Id.* ¶ 4.)

9    The BMG Defendants are owned and controlled by the same parent company.  (FAC ¶ 11.)

10   According to Plaintiff, BMG US and BMG France operate as a single enterprise because they both

11   refer to themselves as "BMG" in their public-facing communications.  (*Id.*)

12   Olympique de Marseille, SASP has been incorporated as a professional sports corporation

13   ("société anonyme sportive professionelle") in France since 1995.  (Dkt. No. 39-1, Vesval Decl., ¶

14   2.)  It is headquartered in Marseille, France, where its CEO, executive management, and all of its

15   employees operate.  (*Id.* ¶ 3.)  The entity owns and operates the professional French soccer team

16   Olympique de Marseille, which was originally founded in 1899 and is commonly known as "OM"

17   throughout Europe.  (*Id.*)  An American businessperson owns and controls the Olympique de

18   Marseille soccer team and resides "at least part-time" in Los Angeles.[3]  (FAC ¶ 10.)  Olympique

19   de Marseille has fans around the world, including in California.  (Dkt. No. 48-3, Conlon Decl., ¶

20   3.)  Olympique de Marseille President Jacques-Henri Eyraud once tweeted, sometime prior to

21   February 2, 2019, "I LOVE L.A.!"  (*Id.* ¶ 4, Ex. 3.)

22   Olympique de Marseille also owns and operates OM Developpement, a simplified joint-

23   stock company ("société par actions simplifiée").  (Vesval Decl., ¶ 4.)  OM Developpement is

24   headquartered in Marseille, where its CEO, executive management, and all of its employees

25   operate.  (*Id.*)  OM Developpement performs licensing, marketing, and sponsorship services in

26   relation to the Olympique de Marseille soccer team.  (*Id.*)  According to Plaintiff, Olympique de

27

28   ─────────────────────
[3] It is unclear to the Court if Mr. McCourt owns Olympique de Marseille, SASP.

Marseille and OM Developpement operate as a single enterprise.  (FAC ¶ 10.)

Neither OM Defendant conducts business in California or the United States; has an agent for service of process in California or the United States; advertises or solicits in California or the United States; possesses a bank account in California or the United States; owns, possesses, or uses real property in California or the United States; or pays taxes to California or the United States.  (Vesval Decl., ¶¶ 16-21.)

In the summer of 2020, BMG France and Olympique de Marseille executed an agreement to launch a record label based in Marseille, France.  (Dkt. No. 47-6, Term Sheet, at 1.)  BMG France and Olympique de Marseille named the label "OM Records."  (*Id.*; *see also* Vesval Decl., ¶ 2.)  The terms of the agreement were written in French and English, with French prevailing in the event of conflict.  (*Id.* at 13.)  The parties expressly declare their belief that "Marseille is the ideal location to build a music label" and that a "BMG – OM collaboration is . . . the perfect opportunity to build a music label having a strong connection with the music that is already popular among OM fans."  (*Id.* at 1.)

The agreement identifies "the key development territories for Artists" as "France, Belgium, Switzerland, and . . . Algeria, Morocco, Tunisia, Cameroon, Senegal, and Ivory Coast."  (*Id.* at 3.)  The parties selected French law in a choice of law clause, with Paris Courts as their forum.  (*Id.* at 12.)  All pages of the agreement identify BMG France's address in Paris, France in the footer.  (*See generally*, *id.*)  The United States is mentioned once, with the proviso that "John Loeffler, current Executive Vice President, Head of New York Repertoire and Marketing for BMG shall stay involved in this partnership with OM as long as he is an employee of BMG or consultant to BMG."  (*Id.* at 13.)

Finally, the parties state that "BMG and OM have no desire to enter into a partnership within the framework of a company.  Nothing in this Term Sheet shall be construed as constituting an association, a 'de facto' company, a joint venture or any other agent/principal relationship between BMG and OM, provided that BMG and OM are independent contractors to each other and neither BMG nor OM shall have authority to bind the other. . . ."  (*Id.*)  Nevertheless, the agreement is labeled a "partnership agreement."  (*See id.*)

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Plaintiff contends that the OM Records venture began not with the written agreement, but

2   when Olympique de Marseille's American owner approached an executive with BMG US.  (FAC

3   ¶ 22.)  Plaintiff does not specify where these planning conversations occurred.  Neither the

4   American owner nor the BMG US executive are parties to or signatories of the partnership

5   agreement.  (*See generally*, Term Sheet.)

6       OM Records was short-lived and largely France-oriented.  All OM Records employees

7   were based in Marseille, France.  (Vesval Decl., ¶ 6; Hindermeyer-Cayez Decl., ¶ 12.)  The OM

8   Defendants conducted physical marketing and hosted in-person promotional events in Marseille,

9   France.  (Vesval Decl., ¶ 5.)  All digital marketing for the label was conducted in France,

10  primarily in French.  (*Id.*)  One music video—performed in French by a French artist—comprised

11  more than half of OM Record's YouTube views.  (*See* Conlon Decl., Ex. 14.)

12      However, OM Records produced two songs with Los Angeles-based Afro-French artist

13  Trackdilla.  (*Id.*, Ex. 16.)  Trackdilla posted a video to Instagram of himself at BMG US's Los

14  Angeles campus signing and celebrating the signing of his contract with OM Records.[4]  (*Id.*, Ex.

15  18.)  According to a screen capture of a Trackdilla Instagram post, which in turn features an

16  apparent screen capture from Apple Music, Trackdilla's song "R U FOSURE" charted in sixteen

17  countries in 2021, peaking at number 59 on Apple Music in the United States.  (*Id.*, Ex. 22.)

18  Trackdilla and production company First Sight International promoted Trackdilla's music videos

19  in Los Angeles, including via in-person release parties.  (*Id.* ¶ 27, Ex. 26.)  The videos, flyers, and

20  posts mentioned "OM Records," used the French mark, or tagged @om_records.  (*Id.*)

21      Additionally, Facebook, X, Instagram, and many of the streaming platforms used by the

22  OM Records venture are headquartered in this District.  (FAC ¶ 30.)  Plaintiff submits standard

23  terms and conditions for Apple Music, Instagram, X, and YouTube, which provide that disputes

24  between the user and the platforms will be resolved under California law and in this District.

25  (Conlon Decl., Ex. 13.)

26

27  _____

28  [4] Although Trackdilla's video does not specify the location, the background in his Instagram video appears to match photos of the Los Angeles office from a press release accompanying the office's opening.  (*See id.*, Ex. 19.)

Plaintiff contends that the OM Records venture caused actual confusion with at least three consumers in California. First, Plaintiff provides a screen capture of a Facebook post from "Owen Ingram" stating, "Damn BMG, could've picked a better name for a label than copy the iconic dance label Om Records." (*Id.*, Ex. 8.) Another screen capture of Ingram's account indicates he resides in Santa Monica, California. (*Id.*) Second, Plaintiff provides a screen capture of a comment by "Lex Pelle" to a September 2020 @om_records Instagram post tagging @omrecords (Plaintiff's handle) with the comment "???" (*Id.*, Ex. 9.) Plaintiff also includes a screen capture of Pellegrini Wine's LinkedIn page showing that the page follows "Lex Pelle," and a Press Democrat article interviewing Alexia Pellegrini regarding a 2019 Chardonnay. (*Id.*) At the top of the article, a photograph of a woman sniffing the Chardonnay is attributed to "Lex Pelle." (*Id.*) Although Plaintiff does not explain this somewhat odd collection of screen captures, it appears that Plaintiff is implying that "Lex Pelle" is either Alexia Pellegrini or employed by the Pellegrini family winery, which is located in Sonoma County, California. Lex Pelle's comment, then, could imply a California resident was confused by the "OM Records" name. Third, Plaintiff includes a screen capture of a Tweet from "@erikgallisa" stating, "Ya how's this possible? Different country and copyright laws??" (*Id.*, Ex. 10.) @erikgallisa is the handle for "Mood II Schwing," whose X profile page indicates he is located in "Northern California." (*Id.*)

Finally, Plaintiff contacted Defendants after the launch of Defendants' label to warn Defendants that the label infringed Om Records' trademark rights. (*Id.*, Ex. 4.) Defendants responded. (*Id.*, Ex. 5.)

## C.    Procedural History

While the instant motions were pending, Plaintiff propounded extensive discovery requests. (Dkt. No. 52-1, Ex. B; Dkt. No. 52-2, Ex. B.) Defendants moved for a protective order to stay discovery, which the Court granted. (Dkt. Nos. 52, 55.)

## ANALYSIS

All Defendants now move to dismiss. The OM Defendants and BMG France move under Federal Rule of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction over them. All Defendants move under Rule 12(b)(6) for failure to state a claim under Rule 8's

1   notice requirement and for failure to state a claim under the Lanham Act.  Defendants further

2   argue that, even if this Court has jurisdiction to resolve this action as to all Defendants, and even if

3   the FAC states a claim upon which relief could be granted, the Court should nevertheless dismiss

4   the action on forum *non conveniens* grounds.

5   **D.      Applicable Legal Standards.**

6           Where a party moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the

7   plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v.*

8   *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff must produce sufficient

9   admissible evidence that, if believed, would establish personal jurisdiction.  *Id.*  Where a trial

10   court rules on personal jurisdiction "relying on affidavits and discovery materials without holding

11   an evidentiary hearing, dismissal is appropriate only if the plaintiff has not made a prima facie

12   showing of personal jurisdiction." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d

13   586, 588 (9th Cir.1996) quoting (*Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.

14   1986)).  To determine whether a plaintiff has met its burden, the court takes all uncontroverted

15   allegations in the complaint as true, and "conflicts between the facts contained in the parties'

16   affidavits must be resolved in [the plaintiff's] favor." *Id.* (quoting *WNS, Inc. v. Farrow*, 884 F.2d

17   200, 203 (5th Cir. 1989)).  Nevertheless, "disputed allegations in the complaint that are not

18   supported with evidence or affidavits cannot establish jurisdiction." *AMA Multimedia, LLC v.*

19   *Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).

20           When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a district

21   court accepts as true all well-pleaded material facts and draws all reasonable inferences in favor of

22   the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).  A complaint

23   must contain a "short and plain statement of the claim showing that the pleader is entitled to

24   relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" to survive a

25   motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief

26   that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

27   *Twombly*, 550 U.S. 544, 570 (2007)).  "Labels and conclusions[] and a formulaic recitation of the

28   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If the allegations are

United States District Court
Northern District of California

8

1  insufficient to state a claim, a court should grant leave to amend unless the court determines the

2  pleading could not "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

3  1122, 1130 (9th Cir. 2000).

4  **E.      Materials Outside of the Pleadings.**

5      In general, a court may not consider materials outside of the pleadings in resolving a

6  motion to dismiss under Rule 12(b)(6) without converting the motion to a motion for summary

7  judgment under Rule 12(d). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.

8  2018). However, a court may exercise its discretion to take judicial notice of certain categories of

9  fact not subject to reasonable dispute under Federal Rule of Evidence 201. *Id.* Additionally, a

10  court may consider documents that are incorporated by reference in the pleadings. *Id.*

11      Where, as here, a defendant moves to dismiss on both 12(b)(2) and 12(b)(6) grounds, the

12  Court may consider materials outside the pleadings for the limited purpose of determining whether

13  it has jurisdiction over the non-resident defendants, but the Court does not consider the same

14  materials for determining whether the complaint states a claim. *Stewart v. Screen Gems-EMI*

15  *Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

16  **F.      The Court Grants In Part and Denies In Part Plaintiff's Motion to Seal.**

17      Plaintiff seeks to seal portions of its opposition to the motions to dismiss and Exhibit 1 to

18  the Declaration of Brian S. Conlon in its entirety. (Dkt. No. 42.) The Court has reviewed the

19  motion and the documents, and it finds compelling reasons to seal Exhibit 1. Exhibit 1 reveals

20  certain of the Defendants' confidential business information that could harm their competitive or

21  financial standing if disclosed. However, the portions of Exhibit 1 referenced in Plaintiff's

22  opposition do not threaten Defendants' competitive or financial standing.

23      The Court therefore grants Plaintiff's motion to seal Exhibit 1, but denies the motion as to

24  the redacted portions of Plaintiff's opposition. Plaintiff shall file an unredacted version of its

25  opposition on the public docket within seven days of this Order.

26
27  **G.      The Record Is Not Sufficiently Developed to Determine Whether the Court Has Personal Jurisdiction Over the French Defendants.**

28      In the absence of an applicable federal statute on personal jurisdiction, courts look to the

United States District Court
Northern District of California

9

1   Fourteenth Amendment's Due Process Clause and the long arm statute of the state in which the

2   court sits to determine personal jurisdiction.  *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th

3   1079, 1086 (9th Cir. 2023).  California's long arm statute allows courts to exercise jurisdiction "on

4   any basis not inconsistent with due process."  *Id.*  Accordingly, the analysis under both authorities

5   is the same.  *Schwarzenegger*, 374 F.3d at 800–01.  The exercise of jurisdiction is consistent with

6   due process if it is "reasonable, in the context of our federal system of government" and "does not

7   offend traditional notions of fair play and substantial justice."  *International Shoe Co. v.*

8   *Washington*, 326 U.S. 310, 316-17 (1945).  Courts recognize two primary forms of personal

9   jurisdiction: general and specific.  *Impossible Foods*, 80 F.4th at 1086.

10      Where a defendant is subject to general jurisdiction, it may be haled into court for any

11   dispute, regardless of whether that dispute arises from the defendant's contacts with the forum.

12   *Schwarzenegger*, 374 F.3d at 801.  Thus, in order to comport with due process, general

13   jurisdiction extends only to defendants who are "essentially at home" in the forum.  *Ford Motor*

14   *Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires*

15   *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In the "paradigm" case, a corporation is

16   subject to general jurisdiction in "its place of incorporation and principal place of business."  *Id.*

17   Here, the Court does not have general jurisdiction over the French Defendants because they are

18   incorporated and headquartered in France.  (Vesval Decl., ¶¶ 2, 4; Hindermeyer-Cayez Decl., ¶ 3.)

19      Specific jurisdiction attaches to "a narrower class of claims."  *Ford Motor*, 592 U.S. at

20   359.  In order to hale a nonresident defendant into court under a specific jurisdiction theory, the

21   defendant must have sufficient "minimum contacts" with the forum to comport with due process;

22   that is, the defendant's "suit-related conduct must create a substantial connection with the forum

23   State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  In determining whether specific jurisdiction

24   applies, courts undertake a three-prong analysis: "(1) the defendant must either 'purposefully

25   direct his activities' toward the forum or 'purposefully avail himself of the privileges of

26   conducting activities in the forum'; (2) the claim must be one which arises out of or relates to the

27   defendant's forum-related activities; and (3) 'the exercise of jurisdiction must comport with fair

28   play and substantial justice, *i.e.*, it must be reasonable."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,

United States District Court
Northern District of California

10

874 F.3d 1064, 1068 (9th Cir. 2017)) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.  If the plaintiff meets its burden, the defendant then bears the burden of showing that the exercise of jurisdiction would be unreasonable.  *Id.*

The Court must analyze each non-resident defendant's contacts with California and the United States separately.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

Olympique de Marseilles, SASP, OM Developpement, SAS, and BMG France contend that nothing in the FAC connects their conduct to California or even the United States.  Plaintiff contends that the French Defendants directed their conduct at California and toward Plaintiff specifically, and, further, that the French Defendants are tied to California through BMG U.S.'s contacts with the forum.

The Court finds that Plaintiff has not made a prima facie showing of personal jurisdiction over the French Defendants.  However, because limited jurisdictional discovery is appropriate, the Court defers ruling on the French Defendants' 12(b)(2) motions at this time.

### 1.      Plaintiff Has Not Demonstrated Purposeful Direction.

Where, as here, the alleged non-forum conduct sounds in tort, courts employ the "purposeful direction test"—also known as the "*Calder* effects test"—to determine whether the nonresident defendant "purposefully directed" his conduct toward the forum under the first prong of the specific jurisdiction analysis.  *Axiom Foods*, 874 F.3d at 1069.  To satisfy the purposeful direction test, the "defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"  *Id.* (quoting *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods*, 874 F.3d at 1070).

### a.      The French Defendants Committed Intentional Acts.

"'Intentional act' has a specialized meaning in the context of the *Calder* effects test." *Schwarzenegger*, 374 F.3d at 806.  "Intent" refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  *Id.*  An

"act" "denote[s] an external manifestation of the actor's will." *Id.* (quoting Restatement (Second) of Torts § 2 (Am. L. Inst. 1964)); *see, e.g.*, *id.* (finding the defendant committed an intentional act by placing an advertisement with the plaintiff's image in a local paper).

Here, Defendants BMG France and Olympique de Marseille acted intentionally by physically creating the "OM Records" label and in funding, producing, distributing, and advertising music and music videos. (*See* Term Sheet, at 1; Vesval Decl., ¶ 5); *see also Washington Shoe Co.*, 704 F.3d at 674 (intentional act prong met "by [defendant] intentionally engaging in the actual, physical acts of purchasing and selling the allegedly infringing products").

OM Developpement committed an intentional act by applying to register a mark with the U.S. Trademark Office for the words "OM Records" and the venture's logo. (*See* Vesval Decl., ¶ 11.)

The first prong of the *Calder* effects test is thus satisfied.

**b.    Plaintiff Fails to Show Express Aiming.**

Plaintiff must next show that the French Defendants expressly aimed their conduct at the forum. A defendant's knowledge of the plaintiff's forum connections is insufficient to constitute "express aiming." *Walden v. Fiore*, 571 U.S. at 289. Nor do the defendant's connections with third parties suffice. *Axiom Foods*, 874 F.3d at 1068. Instead, the express aiming requirement may be met only through each of the defendants' "own contacts" with the forum. *Id.* at 1069 (quoting *Walden*, 571 U.S. at 289).

**i.    Defendants' Alleged Knowledge of Plaintiff's Business Does Not Create Express Aiming.**

Plaintiff asserts that this Court should find personal jurisdiction over the French Defendants because the French Defendants were aware of Plaintiff's business and residence in this District. Plaintiff had a longstanding, prior relationship with BMG US, and Plaintiff contacted BMG US the day after OM Records launched to complain about the "OM Records" name. The following month, Plaintiff sent a cease-and-desist letter to Olympique de Marseille and BMG France informing them that Plaintiff operated Om Records from San Francisco. (Conlon Decl., ¶ 5, Ex. 4.) Counsel for Olympique de Marseille responded to the letter, demonstrating receipt.

(*Id.*, Ex. 5, at 3.)

Defendants' knowledge of Plaintiff's use of "Om Records" is "relevant to the minimum contacts inquiry," but does not, "own its own, support the exercise of personal jurisdiction."  *See Axiom Foods*, 874 F.3d at 1069-70.  In cases where "express aiming" has been found on the basis of targeting the plaintiff in the forum, courts have noted particular features of the plaintiff's forum connections which the defendant sought to exploit.  *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1229–30 (holding "something more" was present where defendant's website included forum-based advertisements and profited from forum-based audience); *Friedman v. PopSugar, Inc.*, No. 218CV05888CASMAAX, 2018 WL 6016963, at *8 (C.D. Cal. Oct. 29, 2018) (finding express aiming where defendant took advantage of plaintiff's beachy Los Angeles aesthetic to generate content linking defendant to Los Angeles's beach and celebrity culture).

Here, Plaintiff does not articulate any reason why the French Defendants' knowledge of Plaintiff's forum presence satisfies the inquiry into Defendants'—rather than Plaintiff's—forum ties.  *See Axiom Foods*, 874 F.3d at 1069; *see also Walden*, 571 U.S. at 289 (holding that defendant's knowledge plaintiff would feel effect in forum could not create jurisdiction because "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis.").

Even if "individualized targeting" were sufficient to establish jurisdiction, Plaintiff has not adequately shown that each of the French Defendants was aware of its existence in California.  BMG US, not BMG France, had a prior relationship with Plaintiff.  Plaintiff sent a cease-and-desist letter to BMG France and Olympique de Marseille, not to OM Developpement.  It is thus unclear if, when, and which of the French Defendants had knowledge of Plaintiff's label.

### ii. Defendants' Use of California-based Social Media, Music, and Video Channels Does Not Constitute Express Aiming.

Plaintiff argues that the French Defendants directed their conduct at California because they used websites based in California, with California law-governed terms of service, to promote the "OM Records" label.  This argument overreaches.

The putative terms of service governing the French Defendants' use of Instagram,

United States District Court
Northern District of California

1    YouTube, and the like are irrelevant to the specific jurisdiction inquiry in this case.  Plaintiff does

2    not contend—nor could it—that this dispute arises from those terms of service.  *See AMA*

3    *Multimedia, LLC*, 970 F.3d at 1212 (noting that disputes governed by agreement between

4    defendant and third party by terms of service could be subject to personal jurisdiction, but

5    existence of contract did not otherwise impact specific jurisdiction inquiry).

6         Nor does Defendants' use of California-based streaming and social media platforms

7    demonstrate express aiming at California in promoting or using the allegedly infringing label.  As

8    courts in this district have repeatedly found, "[a]ccepting such an argument would 'subject

9    millions of persons around the globe to personal jurisdiction in California' and 'render the

10   expressly aimed prong of the Calder test essentially meaningless.'"  *St Andrews Links Ltd. v.*

11   *Source & Design Int'l (UK) LTD*, No. 21-CV-06470-JST, 2022 WL 11902199, at *5 (N.D. Cal.

12   Oct. 20, 2022) (quoting *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal.

13   2012); *Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, at *3

14   (N.D. Cal. Sept. 14, 2012)).

15        Plaintiff's allegations, and the large quantity of social media screen captures Plaintiff

16   presents to the Court, do not show that the social media and streaming content by the French

17   Defendants targeted California in any relevant way.  Much of the content, such as the existence of

18   Facebook groups for L.A.-based fans of the Olympique de Marseille soccer club, and a related

19   tweet from the club president that he "Loves L.A.," has no relation to the alleged infringement.

20   Further, Plaintiff has made no showing that the OM Records-related web content "appeals to, and

21   profits from, an audience in the forum."  *Mavrix Photo*, 647 F.3d at 1229-30.  Instead, the

22   materials before the Court show that the French Defendants produced mostly French content

23   intended to target Francophone audiences in primarily Francophone countries.  While the content

24   may have been accessible in California, "not all material placed on the Internet is, solely by virtue

25   of its universal accessibility, expressly aimed at every state in which it is accessed."  *Id.* at 1231;

26   *see St Andrews Links Ltd.*, 2022 WL 11902199, at *3 (holding "[t]he simple fact that Defendants'

27   websites are interactive and accessible to Californians is not enough to satisfy the express aiming

28   prong").

1

iii.     **Defendants' Deal with California-based Trackdilla Does Not Show Express Aiming Towards the Forum.**

2

Plaintiff next argues that Defendants directly targeted California "by dealing with and

3

promoting California artists in California, resulting in music charting in the U.S. market and

4

receiving a California-based award for music in California." (Opp. at 16.)  The artist in question,

5

Trackdilla, appears to have signed an agreement with OM Records at BMG US's Los Angeles

6

office. (Conlon Decl., Ex. 18.)  Trackdilla won the 2021 Hollywood and African Prestigious

7

Award for "best collaboration" and attended the ceremony in Los Angeles. (*Id.*, Ex. 24.)

8

The OM Defendants respond that "OM Records' singular connection with an Afro-French

9

individual who happens to live in California. . . does not constitute a 'substantial connection'"

10

with California, but rather with an individual in the forum. (Dkt. No. 50, OM Reply, at 7 (citing

11

*Walden*, 571 U.S. at 286).)  Moreover, the OM Defendants claim that Trackdilla's award and

12

commercial success in the United States are irrelevant to the analysis because they do not show

13

conduct by the French Defendants. (*Id.*)  BMG France agrees, and it adds that signing a contract

14

in Los Angeles with a third party does not relate to infringement of Plaintiff's mark in California.

15

(Dkt. No. 51, BMG Reply, at 5 n.7.)

16

Based on the evidence currently before the Court, OM Records' contract with Trackdilla

17

and his subsequent commercial successes do not constitute minimum contacts between the French

18

Defendants and the forum state.  Contracts with third parties, even third parties known to have

19

substantial business in California, do not on their own constitute express aiming. *Cf. Tangle, Inc.*

20

*v. Buffalo Games, LLC*, No. 22-CV-07024-JSC, 2023 WL 2774452, at *4 (N.D. Cal. Apr. 3, 2023)

21

(holding California sales by third-party with which defendant had contracted did not support a

22

finding that defendant expressly aimed conduct toward California).  Plaintiff does not (and could

23

not) allege that the French Defendants violated the terms of their contract with Trackdilla.  Nor

24

does it provide any evidence showing that the French Defendants were directly involved in

25

Trackdilla's promotional activities within California.

26

\*\*\*

27

None of the contacts alleged by Plaintiff satisfy the "purposeful direction" prong of the

28

personal jurisdiction analysis.  Because the Court finds that Defendants did not purposefully direct

15

their activities towards California, it does not address whether Plaintiff's claims relate to the French Defendants' California contacts or whether the exercise of personal jurisdiction over the French Defendants is reasonable in this case.

### 2. Plaintiff Has Not Shown Rule 4(k)(2) Jurisdiction Applies.

Plaintiff next argues that personal jurisdiction over the French Defendants is appropriate under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides for federal jurisdiction for claims that arise under federal law; where the defendant has been served or waived service; "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction"; and "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. Proc. 4(k)(2). Rule 4(k)(2) jurisdiction is appropriate if a nonresident defendant has extensive contacts with the United States, but where those contacts "are so scattered among states that none of them would have jurisdiction." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022) (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001)). Federal longarm jurisdiction is disfavored, and Plaintiff faces a "high bar" to demonstrate minimum contacts with the nation as a whole. *Fumoto Giken Co. v. Mistuoka*, No. CV149797DMGMRWX, 2015 WL 12766167, at *4 (C.D. Cal. Apr. 16, 2015).

The French Defendants waived service. (Dkt. Nos. 17, 31.) As the French Defendants are incorporated and headquartered in France, they are not subject to general jurisdiction in the United States. Accordingly, longarm federal jurisdiction lies if exercising specific jurisdiction comports with due process. *In re Volkswagen "Clean Diesel" Mktg.*, 2017 WL 4890594, at *17 (N.D. Cal. Oct. 30, 2017). This "due process analysis is identical to the analysis for the forum state except the relevant forum is the United States as a whole." *Monster Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009). In step one of the specific jurisdiction analysis, Plaintiff must demonstrate that the French Defendants purposefully directed their conduct to the United States.

As discussed above, the BMG France and Olympique de Marseille committed intentional acts by entering into the OM Records partnership, and OM Developpement committed an intentional act by applying to register the trademark. However, the French Defendants' alleged

16

knowledge of Plaintiff's existence, their use of websites and social media, and their contract with Trackdilla do not provide sufficient contacts to show that the French Defendants purposefully directed their conduct towards the United States.  The uncontradicted affidavits provided by the French Defendants and the partnership agreement giving rise to the OM Records venture show that the conduct was directed towards France and Francophone countries, not towards the United States.

Plaintiff provides five additional bases for exercising federal jurisdiction over the French Defendants: (1) the role of John Loeffler, from BMG US, in the enterprise; (2) the role of Frank McCourt, Olympique de Marseille's American owner, in the enterprise; (3) the English-language story run by *Billboard* staff announcing the launch of OM Records; (4) "English-language U.S.-based recordings" produced by OM Records which charted in the United States via Apple Music; and (5) OM Developpement's trademark application for "OM RECORDS" with the U.S. Trademark Office.  (Opp. at 20.)  These alleged contacts do not move the needle.

### i. The Involvement of John Loeffler and Frank McCourt Does Not Relate to the French Defendants.

Plaintiff alleges that American Mr. McCourt, owner of the Olympique de Marseille soccer team, conceived of the idea for the infringing label and that Mr. Loeffler, a resident of New York, participated in the project.  Their alleged participation does not create minimum contacts with the United States.  Plaintiff does not explain how either McCourt or Loeffler's conduct can be attributed to any of the French Defendants, or even whether McCourt or Loeffler's conduct occurred within the United States.  Neither individual is named as a party to this action, and beyond conclusory allegations that all Defendants acted in concert and are responsible for the others, neither is alleged to have acted on behalf of the French Defendants.

Loeffler is an officer with BMG US, a separate legal entity from BMG France.  Although named in the partnership agreement as being "involved," he was not a signatory.  The only other evidence provided to the Court regarding Loeffler's involvement is a statement Loeffler made to the press celebrating the partnership between BMG and Olympique de Marseille.  In order for Loeffler's vague involvement to be imputed to BMG France, Plaintiff would first need to make a

United States District Court
Northern District of California

1   showing that Loeffler's actions could be imputed to BMG US, and second that BMG US is an

2   alter ego of BMG France.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015)

3   (explaining that personal jurisdiction may be imputed to foreign related company if the entities are

4   "'not really separate entities,' such that one entity's contacts with the forum state can be fairly

5   attributed to the other") (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

6   Plaintiff does not attempt a prima facie showing that the BMG sister companies are alter egos of

7   each other.

8        McCourt owns the Olympique de Marseille soccer club, which is a separate legal entity

9   from OM Developpement.  Like Loeffler, McCourt did not sign the partnership agreement.

10   Plaintiff makes no showing that McCourt is personally responsible for Olympique de Marseille's

11   conduct, or that McCourt's conduct should be imputed to Olympique de Marseille.  *See Uhlig v.*

12   *Fairn & Swanson Holdings, Inc.*, No. 20-CV-00887-DMS-MSB, 2020 WL 6872881, at *3 (S.D.

13   Cal. Nov. 23, 2020) (holding that "ownership and control of [nonresident defendant] alone do not

14   establish the requisite level of control for alter ego jurisdiction").

15        At best, there is an attenuated connection between these nonparty individuals and the

16   foreign defendants, but this connection does not demonstrate that the French Defendants purposely

17   directed their activities towards the United States.

18        **ii.   *Billboard*'s Story Cannot Be Imputed to the French Defendants.**

19        Plaintiff does not provide any reason why *Billboard*'s publication should be connected to

20   the French Defendants.  Plaintiff does not, for example, contend that the French Defendants hired

21   *Billboard* to promote the launch of their OM Records label within the United States.  Instead,

22   Plaintiff alleges that the Defendants issued a press release online in French and English to

23   announce the partnership, and that *Billboard* "ran an article" on the launch.  (FAC ¶ 25.)  Nothing

24   suggests that the French Defendants are responsible for this third-party's reporting.

25        **iii.   Plaintiff Presents No Nationwide Contacts Arising from OM**
              **Record's Relationship with Trackdilla that Differ from the**
26            **French Defendants' Contacts with California.**

27        The Court assumes that the "English-language U.S.-based recordings available to U.S.

28   consumers that charted in the U.S." referenced by Plaintiff are the Trackdilla songs named in

United States District Court
Northern District of California

1    Plaintiff's opposition.  The French Defendants' relationship with Trackdilla does not create

2    minimum contacts with the United States for the same reason it does not create minimum contacts

3    with California: contracts with third parties do not constitute express aiming towards the forum.

4

5               **iv.   OM Developpement's Application for Trademark Registration
                Is Likewise Insufficient to Constitute Express Aiming.**

6          Plaintiff last contends that the "OM Defendants" attempted to "usurp" its business by filing

7    to register "OM RECORDS" with the U.S. Trademark Office.  OM Developpement (not

8    Olympique de Marseille) applied to register the mark.  (*See* Vesval Decl., ¶ 11; Conlon Decl., Ex.

9    11.)  OM Developpement abandoned the application after Om Records filed an opposition.

10   (Conlon Decl., Ex. 11.)

11         Plaintiff cites to two district court cases for the proposition that an application for

12   trademark registration constitutes minimum contacts between a nonresident entity and the United

13   States for jurisdiction under Rule 4(k)(2):

14         In the first, *Monster Cable*, an Italian corporation filed a trademark application for the

15   mark "MONSTER" "for use in connection with multi-purpose steam cleaners for domestic use."

16   *Monster Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1006 (N.D. Cal. 2009).  The

17   plaintiff, an American entity which also used the term "MONSTER" in connection with cleaning

18   products, brought suit for trademark infringement after unsuccessfully opposing the registration.

19   *Id.*  The district court found that the defendant did not "purposefully direct" its activities towards

20   the United States, but, by registering a trademark, that it had "purposefully availed" itself of the

21   benefits of doing business within the United States.  *Id.* at 1010.  Because the Italian defendant

22   would be able to sue others who infringed the "MONSTER" mark, it had "invoke[d] the benefits

23   and protections of trademark law."  *Id.*  Fairness and common sense dictated that it could be sued

24   on the same basis.

25         In the second case cited by Plaintiff, *Expensify*, the U.S.-based plaintiff sought declaratory

26   judgment of non-infringement, cancellation of the defendants' trademark, and damages for false or

27   fraudulent registration.  *Expensify, Inc. v. Swappoint AG*, No. 22-CV-05720-LB, 2023 WL

28   6323103, at *1 (N.D. Cal. Sept. 28, 2023).  The plaintiff argued that the defendant fraudulently

filed its competing mark in an attempt to interfere with the plaintiff's program.  *Id.* at *2.  The district court found that "the trademark registration is enough" to establish express aiming.  *Id.* at *7.  The act of registration could not be attenuated from a declaratory suit as to its validity.  *Id.*

The OM Defendants respond that *Monster Cable* and *Expensify* are outlier cases where jurisdiction was appropriate because the trademark registrations themselves were at the core of the disputes.  The OM Defendants provide contrary cases which they contend are more persuasive.  For example, in *Fumoto Giken Co. v. Mitsuoka*, the district court found that *Monster Cable*'s reasoning that trademark registration alone constitutes "purposeful availment" conflicts with "the Ninth Circuit's cautious application of Rule 4(k)(2)."  2015 WL 12766167, at *5.  In that case, a Canadian defendant owned an interactive website that promoted its allegedly infringing products, had solicited business in California, and owned American trademark registrations for the allegedly infringing marks.  *Id.* at **1, 3.  After finding that the website and solicitation within the United States were not sufficient to establish "purposeful direction" toward the country, the court rejected the idea that a trademark registration alone could transform otherwise minimal contacts into substantial contacts such that Rule 4(k)(2) jurisdiction was appropriate.  *Id.* at *5.  Subsequent district court decisions have followed *Fumoto*'s reasoning to find that trademarks or trademark applications do not, without more, establish express aiming.  *See St. Andrews Links Ltd.*, 2022 WL 11902199, at *5 (finding denied trademark application did was too attenuated to create jurisdiction over UK-based defendant); *Athleta, Inc. v. Sports Grp. Denmark A/S*, No. 22-CV-03192-JST, 2023 WL 4110097, at *3 (N.D. Cal. June 20, 2023) (holding abandoned trademark application does not justify exercise of federal longarm jurisdiction over Danish defendant).

The Court finds the reasoning in *Fumoto* persuasive.  OM Developpement's abandoned trademark application does not, without more, transform its conduct into express aiming towards the United States, and it does not rise to the level of "extensive contacts" with the United States required to create federal longarm jurisdiction.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).  Unlike the defendant in *Monster Cable*, which both registered the infringing mark and distributed products with the mark within the United States, OM Developpement's only action in the United States was to attempt to register the mark, and then to

United States District Court
Northern District of California

1   abandon the mark upon Plaintiff's opposition.  *See Monster Cable*, 642 F. Supp. 2d at 1006;

2   (Conlon Decl., Ex. 11.)  This case differs from *Expensify* as well, because, in that case, the

3   plaintiff challenged the defendant's successful registration as fraudulent, whereas here OM

4   Developpement did not obtain registration.  *See Expensify*, 2023 WL 6323103, at *7.

5       Accordingly, OM Developpement's abandoned trademark application is insufficient to

6   confer personal jurisdiction over the French Defendants under Rule 4(k)(2).

7       **3.    Limited Jurisdictional Discovery Is Warranted.**

8       Plaintiff requests that it be given an opportunity for jurisdictional discovery.  Specifically,

9   Plaintiff requests a 90-day discovery period in which to probe the OM Records' streams and sales

10  in California, communications with California and U.S.-based personnel, and work in California

11  relating to OM Records' agreement with Trackdilla.  (Opp. at 19.)  The French Defendants

12  contend that jurisdictional discovery is unwarranted because none of Plaintiff's allegations, if true,

13  would create personal jurisdiction over the French Defendants.

14      In the Ninth Circuit, a plaintiff may be entitled to jurisdictional discovery if additional

15  facts will help clarify a controverted personal jurisdiction dispute.  *Boschetto v. Hansing*, 539 F.3d

16  1011, 1020 (9th Cir. 2008).  Although more than a hunch is required for a plaintiff to be entitled to

17  jurisdictional discovery, a prima facie showing of personal jurisdiction is not.  *Id.*; *see Harris*

18  *Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (remanding

19  for jurisdictional discovery where plaintiff did not have record to make prima facie showing of

20  jurisdiction).

21      Here, Plaintiff conflates the actions of all French Defendants with each other and with

22  BMG US.  Further inquiry into each of the French Defendants' actions with regard to use and

23  distribution of the OM Records mark in California or the United States could yield evidence that

24  the French Defendants did target California or the United States, rather than merely France and

25  other Francophone countries.  In particular, evidence that the French Defendants promoted the

26  "OM Records" brand within California in conjunction with Trackdilla could support a finding of

27  purposeful direction here.  The Court finds that limited jurisdictional discovery is appropriate.

28      Pursuant to Local Rule 72-1, the Court refers the determination of the scope of

United States District Court
Northern District of California

21

jurisdictional discovery and potential discovery matters that may arise to a randomly assigned magistrate judge.

**H.    The Court Declines to Dismiss on the Basis of Forum *Non Conveniens*.**

The French Defendants ask the Court to dismiss the action on forum *non conveniens* grounds.  When ruling on a motion to dismiss for forum *non conveniens*, courts must consider the availability of an adequate alternative forum and whether the balance of private and public interest factors favors dismissal.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).  The French Defendants face a "heavy burden of proof" in showing that an adequate alternative forum exists because Plaintiff is an American citizen of this judicial district.  *Id.* at 1143.

The French Defendants have not met this heavy burden.  The OM Defendants point, without elaboration, to the existence of "courts in the United Kingdom, France, and the European Union—where the OM Defendants are amenable to service of process."  (OM Mot. at 12.)[5]  The BMG Defendants incorporate the OM Defendants' arguments by reference.  (BMG Mot. at 4.)  It is not until the OM Defendants' reply, in a footnote, that the French Defendants provide any evidence or citation to judicial remedies for trademark infringement in European, French, or British courts.  (Dkt. No. 50, OM Reply at 5 n.19.)  The Court is not required to consider arguments and evidence presented for the first time on reply or in footnotes.  *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).  Given their heavy burden, the French Defendants' efforts were too little, too late, to establish the adequacy of an alternative forum.

**I.    The FAC States a Claim Upon Which Relief May Be Granted as to the OM Defendants, But Not as to the BMG Defendants.**

The French Defendants seek dismissal of Plaintiff's Lanham Act claim under Rule 12(b)(6) because the Act does not apply to conduct outside of the United States.  All Defendants

---

[5] The OM Defendants also point to the U.K. Intellectual Property Office and the EUIPO, where Plaintiff has already challenged the French Defendants' use of "OM Records."  (*Id.*)  On reply, they clarify that these proceedings "are evidence that this is a European controversy," not that the administrative proceedings constitute proceedings in adequate alternative fora.

1   further argue that the FAC should be dismissed for failure to comport with Rule 8's notice

2   pleading standard because Plaintiff engages in group pleading.

3           **1.      Plaintiff Alleges Domestic Use of "OM Records."**

4         The Lanham Act protects trademarks—that is, marks used in commerce which "identify

5   and distinguish goods." *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146-47

6   (2023) (quoting 3 McCarthy, Trademarks and Unfair Competition § 19:10 (5th ed. 2023)).  A

7   holder of a registered trademark, or an unregistered trademark who uses the mark in commerce,

8   can bring suit to stop others from using similar marks that are "likely to cause confusion, or to

9   cause mistake, or to deceive."  15 U.S.C. § 1125(a)(1)(A).

10         Last year, the Supreme Court ruled that the Lanham Act does not apply to extraterritorial

11   use of U.S. trademarks.  *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023).

12   In that case, foreign defendants manufactured and sold infringing products "mostly" in Europe,

13   but made "some" sales directly into the United States.  *Id.*  The Court explained that the relevant

14   conduct is "use in commerce," meaning "the bona fide use of a mark in the ordinary course of

15   trade, where the mark serves to identify and distinguish the mark user's goods and to indicate the

16   source of the goods."  *Id.* at 428 (internal marks omitted).  The Court then remanded the case for

17   the district court to determine the extraterritoriality of the defendants' conduct.

18         In a concurring opinion, Justice Jackson offered additional guidance: "If a marked good is

19   in domestic commerce, and the mark is serving a source-identifying function in the way Congress

20   described, [the Lanham Act] may reach the 'person,' § 1127, who is 'us[ing that m]ark as a

21   trademark."  *Id.* at 430 (Jackson, J. concurring) (quoting *Jack Daniel's Properties, Inc. v. VIP*

22   *Prods. LLC*, 599 U.S. 140, 157 (2023)).  A foreign defendant need not sell its products in or

23   directly into the United States to use the mark in domestic commerce, so long as the mark is sold

24   within the United States and identifies the source.  *Id.* at 431-32.  Finally, Justice Jackson

25   speculated that "in the internet age, one could imagine a mark serving its critical source-

26   identifying function in domestic commerce even absent the domestic physical presence of the

27   items whose source it identifies."  *Id.* at 432 n.2.

28         Assisted by Justice Jackson's explanation of "use in commerce," the Court finds that

United States District Court
Northern District of California

Plaintiff adequately alleges domestic use of the "OM Records" mark by Defendants.  Plaintiff alleges that Defendants made music recordings and videos with the mark "available to the U.S. consuming public" and "accessible in the U.S." for sale and streaming.  (FAC ¶¶ 30, 34.)  Plaintiff does not take the next step of alleging that the OM Records music recordings and videos were actually accessed or purchased by any domestic consumers or sold by any platforms or retailers within the United States; however, the Internet platforms accessible to American consumers and based in the United States are effectively a storefront for digital music and music video sales.  *See Abitron*, 600 U.S. at 432 n.2 (Jackson, J. concurring).  By using the "OM Records" moniker to post content accessible in the United States, Defendants placed the mark in domestic commerce.

To be clear, Plaintiff may not recover under the Lanham Act for any allegedly infringing conduct that occurred solely outside of the United States.  *See Abitron*, 600 U.S. at 428 (warning against applying the Lanham Act to conduct in the European Union).  The Lanham Act extends to Defendants only insofar as they placed infringing goods in the domestic market.  Plaintiff alleges Defendants did so.

### 2.    The FAC Adequately Alleges Likelihood of Confusion.

The Court finds that the FAC adequately alleges that the "OM Records" label risks consumer confusion with the "Om Records" label.  Although Plaintiff's direct allegations on this point are either conclusory (*see* FAC ¶¶ 33, 44) or in relation to foreign consumers (*id.* ¶ 32), and although Plaintiff provides little argument to assist the Court on this point, the Court reasonably infers risk of confusion from the FAC.

As a matter of common sense, "OM Records" and "Om Records" are nearly identical names for music labels, and that near-identity is likely to result in confusion.  This inference is bolstered by Plaintiff's allegation that the U.S. Trademark Office suspended Plaintiff's "Om Records" mark on the basis of potential confusion with OM Developpement's application for an "OM Records" mark.  (*Id.* ¶ 31.)  Plaintiff also alleges that the U.K. Intellectual Property Office and EUIPO have found Plaintiff possesses superior rights to the name "OM RECORDS" than Defendants—outcomes which suggest the marks are confusingly similar.  (*Id.* ¶¶ 37, 38.)

United States District Court
Northern District of California

### 3.     Plaintiff Does Not Adequately Allege Conduct by the BMG Defendants.

Rule 8 requires plaintiffs suing multiple defendants to provide "the basis of [their] claim against each defendant."  *BSD Crown, LTD. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 998 (N.D. Cal. 2023) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  This requires plaintiffs to allege both the "nature" and the "grounds" of their claims against each defendant.  *See Twombly*, 550 U.S. at 545 (holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions").  "Specific identification of the parties to the activities alleged by the plaintiffs is required . . . to enable the defendant to plead intelligently."  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quoting *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277, 284 (D.Wis.1975)).

In order to plead a single enterprise theory, a complaint must include sufficient facts "to support a plausible claim that: (1) there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) if the acts are treated as those of only one of the corporations, an inequitable result will follow."  *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 960 (N.D. Cal. 2015).

Here, the FAC groups together BMG US and BMG France as "BMG," and Olympique de Marseille and OM Developpement as "Olympique de Marseille."  (FAC ¶¶ 10-11.)  The FAC groups all four together as "Defendants," and then attributes all acts by any Defendant to all.  (*Id.* ¶ 11.)  Defendants are on notice of the *nature* of the claims against them: infringement of Plaintiff's trademarks.  *See, e.g.*, *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 965 (N.D. Cal. 2015) (finding lumping of defendants together permissible where "gravamen" of claim was all defendants infringed trademarks).

As relates to the BMG Defendants, however, the *grounds* on which the claims rest are lacking.  As to BMG US, the FAC alleges the conclusion that an officer with BMG US "was responsible for conceiving and launching OM Records."  (FAC ¶ 11.)  This conclusion appears based upon the allegation that "Olympique de Marseille's American owner approached [the BMG US executive] about a partnership between the soccer club and BMG to create a new label."  (*Id.* ¶ 22.)  No parallel officer is identified with BMG France, and no specific conduct is alleged by

BMG France.  No specific role for either BMG entity is alleged.  (*See generally*, *id.*)

The FAC instead offers the legal conclusion that BMG US and BMG France "operate as a single enterprise," and it lumps all Defendants together for all remaining allegations.  (*Id.* ¶ 11.)  Yet this "single enterprise" assertion is bereft of support.  The FAC notes simply that both BMG Defendants share a parent company and refer to themselves as "BMG" in public-facing communications.  (*Id.*)  These scant allegations do not show that BMG US and BMG France are alter egos of each other such that BMG US's conduct can be imputed to BMG France.  Without more, it is unclear from the face of the FAC what conduct the BMG Defendants allegedly engaged in that gives rise to liability.

The FAC similarly lacks allegations showing that Olympique de Marseille and OM Developpement operate as a single enterprise.  However, The FAC alleges at least some specific conduct by each of Olympique de Marseille and OM Developpement: Olympique de Marseille launched and operated OM Records, (*see* FAC ¶¶ 1, 3, 28), and OM Developpement sought to register the "OM Records" mark, (*id.* ¶ 10).

### 4.   The Court Declines to Dismiss the State Law Claims Against the OM Defendants.

The OM Defendants contend that Plaintiff's state law claims "rise and fall" with the Lanham Act claim.  (*See* OM Mot. at 15.)  Because the Court finds that the FAC states a claim against the OM Defendants under the Lanham Act, dismissal of the state law claims is not warranted.

### CONCLUSION

For the foregoing reasons, the Court rules as follows:

- The OM Defendants' motion to dismiss for failure to state a claim is DENIED.
- The BMG Defendants' motion to dismiss for failure to state a claim is GRANTED. Plaintiff may file an amended complaint within 21 days of this Order.
- The Defendants' motion to dismiss on forum *non conveniens* grounds is DENIED.
- The Court REFERS the matter to a randomly assigned Magistrate Judge for jurisdictional discovery.

- The Court DEFERS ruling on the French Defendants' motions to dismiss for lack of personal jurisdiction until Plaintiff has an opportunity to conduct jurisdictional discovery.
- Plaintiff's administrative motion to file under seal is GRANTED, IN PART, and DENIED, IN PART, as stated above.  Plaintiff shall file an unredacted version of its opposition on the public docket within seven days of this Order.
- The trial and pretrial dates ordered by the Court in Dkt. No. 28 are VACATED.
- The parties shall file a joint case management statement within 90 days of this Order, or upon completion of jurisdictional discovery as permitted by the Magistrate Judge, whichever is earlier.

**IT IS SO ORDERED.**

Dated: June 17, 2024

JEFFREY S. WHITE
United States District Judge

Cc: Magistrate Referral Clerk