Joint Discovery Dispute Letter                                              August 12, 2024

Magistrate Judge Robert M. Illman
Eureka-McKinleyville Courthouse
3140 Boeing Ave
McKinleyville, CA 95519

**Re:    Joint Discovery Dispute -** *Om Records v. BMG Rights Management US, et al.*

Magistrate Judge Illman:

We write to resolve an ongoing discovery dispute between Plaintiff Om Records and Defendants BMG Rights Management (US), LLC ("BMG US") and BMG Rights Management (France), SARL ("BMG France") (together, "BMG" or the "BMG Defendants"). A hearing on a related dispute with the OM Defendants is set for Aug. 13th; the parties jointly request consolidating the hearings on both matters to Aug. 15th.

Plaintiff asserts claims for willful trademark infringement against Olympique de Marseille, SASP ("OMS"), OM Deveoppement, SAS ("OMD") (together, the "OM Defendants"), BMG France (together, with the OM Defendants, the "French Defendants") and BMG US (collectively, "Defendants"). On Feb. 15th, the French Defendants moved to dismiss for lack of personal jurisdiction. ECF 39, 40. BMG US and BMG France also moved to dismiss for failure to state a claim. On April 23rd, Judge White stayed discovery pending the resolution of the Defendants' motions. ECF 56. On June 17th, Judge White "defer[red] ruling on the French Defendants' motions to dismiss for lack of personal jurisdiction," ordered jurisdictional discovery as to the French Defendants, and directed the parties to file a joint case management statement the earlier of Sept. 16th or upon completion of jurisdictional discovery as permitted by Your Honor. ECF 57 at 26-27. Judge White also granted the BMG Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim (*id.* at 25-26) but granted Plaintiff leave to amend (see ECF 62 (the "SAC")).

## Plaintiff's Position

**Background:** On March 14th and June 27th, Plaintiff served a second and third set of document requests on each of the BMG Defendants directed to contacts with the U.S. and California in their "OM Records" venture. See Exhibit A-D (RFP Sets 2 and 3 to each BMG Defendant). The second set of jurisdictional discovery (i.e., RFP Set 3), which was served on the BMG Defendants after the Court ordered jurisdictional discovery and is responsive to that order, is even more targeted, seeking, for example, documents sufficient to show expenditures made pursuant to the Defendants' Partnership Agreement in the U.S. and/or California. On the day responses to RFP Set 2 were due (April 15th), BMG's counsel emailed to say "we are not going to serve responses/objections [] until the motion [for a protective order staying discovery, see ECF 52] is decided." They further purported to "reserve the right to make all applicable objections." Despite the Court later ordering BMG to submit to jurisdictional discovery, BMG failed to serve written responses. Similarly, though due on July 29th, BMG served no written responses to RFP Set 3.

Joint Discovery Dispute Letter                                             August 12, 2024

Per Your Honor's Standing Order (at ¶ 4), the parties met and conferred, including during a conference call between lead trial counsel on July 29th.[1] As of this moment, neither BMG Defendant has served any written responses. On Aug. 9, BMG produced 56 pages of documents. . The parties have stipulated to a protective order in the case. ECF 67.

**Custodians:** Plaintiff proposed four custodial searches for responsive documents: For BMG US, John Loeffler (the BMG US executive vice president responsible for conceiving and launching Defendants' venture and who was bound by BMG France, via the venture's Partnership Agreement, to stay involved in the venture) (see SAC ¶¶ 3, 16-19, 34, 36, 38, 46) and David Hirshland (another BMG US executive vice president involved in coordinating the venture's response to Plaintiff upon its learning of their infringing mark) (id. ¶¶ 43-47); for BMG France, Sylvain Gazaignes (a BMG France executive who signed the venture's Partnership Agreement, aided Mr. Hirshland in coordinating the venture's response, and to whom Mr. Loeffler reported on matters relating to the venture) (id. ¶¶ 17, 36, 46, Ex. A), and Emilie Hauck (a BMG France employee made the Artistic Director for the "OM Records" venture who reported to Mr. Gazaignes and was based in the OM Defendants' offices in Marseille) (id. ¶ 20, Ex. A). As alleged, the BMG Defendants act as a single entity, and did so in connection with Defendants' OM Records venture. SAC ¶¶ 14-20. These communications are probative of this fact. That's in addition to BMG France contractually obligating itself in the Partnership Agreement to provide the services of a senior executive of BMG US, Mr. Loeffler, who in turn reported on matters relating to Defendants' OM Records venture to an executive of BMG France, Mr. Gazaignes.

The BMG Defendants have never objected to Plaintiff's identification of these four custodians per se; they've simply insisted, as they do here, that—notwithstanding that four custodians is likely to substantially compress the breadth of the search as well as the nature and scope of the production of documents—the RFPs are overbroad. That is, BMG had no objection to the custodians themselves. Nor is there any basis for such an objection, given that these individuals were central to the launch and operation of Defendants' OM Records venture, as well as coordinating Defendants' efforts to use foreign trademark law, in bad faith, to gain priority over Plaintiff's mark here in the U.S. SAC ¶¶ 32, 57-60.

**Waiver:** BMG failed to serve responses or objections to Plaintiff's discovery, therefore waiving them. *Richmark Corp. v. Timber Falling*, 959 F. 2d 1468, 1473 (9th Cir. 1992). As to RFP Set 2, though a pending motion for a protective order motion may have supplied an excuse for failing to respond and object when BMG's responses were due (see FRCP 37(d)(2)), the Court eventually granted the order only in part, subsequently ordering jurisdictional discovery. At that point, BMG "cannot argue that its subsequent failure to comply would be justified." (See Advisory Committee Notes on 1993 Amendments to Rule 37.) Yet BMG has still refused to serve written responses. As to RFP Set 3 (served after the Court's order granting jurisdictional discovery), the BMG Defendants didn't bother to respond at all—even by email. Accordingly, they have waived all objections. Moreover, the Court should decline to allow BMG to rewrite Plaintiff's document requests and curate their production of documents.

**David Hirshland Subpoena:** Plaintiff subpoenaed former BMG US executive vice-president David Hirshland for a deposition and to produce documents. See Exhibit E attached hereto. Mr. Hirshland served as Plaintiff's point of contact at BMG for years; upon learning of Defendants' venture and

---

[1] BMG's attachments (Exhibits F and G) violate this Court's order and Plaintiff objected to including them. Moreover, neither reflects Plaintiff's agreement that BMG could preserve its objections by email. For the avoidance of doubt, there was no such agreement.

Joint Discovery Dispute Letter                                              August 12, 2024

infringing mark, Plaintiff reached out to Mr. Hirshland, who in turn reached out to Mr. Gazaignes. See SAC at ¶¶ 43-46. The follow up reveals that the two were engaged in other conversations or communications related to the matter; the response to Plaintiff's email was clearly curated by Mr. Hirshland. Id. ¶¶ 46-47. All of this activity was part and parcel of Defendants' collective, concerted effort to interfere with Plaintiff's trademark rights in the U.S.—an effort eventually abandoned when the E.U. Intellectual Property Office declared the French trademark registration used to gain priority in the U.S. to be filed in bad faith. See SAC at ¶¶ 32, 58.

Upon being served with the subpoena, Mr. Hirshland telephoned Plaintiff's counsel, who directed him to BMG's counsel and immediately advised BMG's counsel in writing of the call. BMG's counsel responded: "Don't be so sure that this deposition will happen. It's just another fishing expedition that has nothing to do with personal jurisdiction." Plaintiff's counsel asked for an explanation, as Mr. Hirshland "had direct communication with BMG FR on the precise subject at issue in this case." BMG's counsel called this "specious" and "nonsense," because Plaintiff "specifically asked [Mr. Hirshland] to get in touch with BMG France." That's not true: Plaintiff asked Mr. Hirshland to provide "a contact for BMG France," not to insert himself into the subject. SAC at ¶ 44. And that doesn't follow—Mr. Hirshland's involvement in the venture doesn't become irrelevant simply because Plaintiff contacted him with concerns about Defendants' infringing venture. Needless to say, Defendants proceeded with their OM Records venture, using Plaintiff's name and mark in the U.S. to sell recorded music here. SAC at ¶¶ 48-56. Indeed, the Partnership Agreement vests "BMG" (as it's referred to there) with operational control of the OM Records venture, including expenditures (which came exclusively from them), meaning that most of the pertinent activity and communications relating to the Venture are likely to originate with the BMG Defendants. SAC at ¶¶ 35-36.

**Conclusion**: Plaintiff respectfully requests the Court rule as follows: (1) Deem Messrs. Loeffler, Hirshland, and Gazaignes and Ms. Hauck proper custodians for search purposes, which, for the avoidance of doubt, should include both email and text messaging consistent with the requests; (2) Direct the BMG Defendants to serve objection-less responses to RFP Sets 2 and 3 no later than 10 days from the date of the Court's order; (3) Direct the BMG Defendants and Mr. Hirshland to produce responsive documents, together with any privilege log, no later than 15 days from the date of the Court's order; and (4) Direct the BMG Defendants to produce Mr. Hirshland for a deposition.

## The BMG Defendants' Position

**Summary:** Plaintiff's misguided lawsuit arises from the alleged use of the OM Records trademark in connection with a short lived and now defunct venture between the French Defendants. The venture was intended to develop and promote French and Afro-French artists and targeted France and Francophone countries. The venture ended in December 2022. No Defendant is using the OM Records mark (and have promised never to use it).[2] BMG US was not involved in the venture.[3]

---

[2] There are no remedies available to Plaintiff because there is nothing to enjoin and there are no damages. Accordingly, BMG Defendants have continuously attempted to move this matter forward in a cost-efficient manner given how little is really at stake in this case.

[3] The Court granted the BMG Defendants' dismissal motion for failure to state a claim because Plaintiff could not allege any non-conclusory wrongdoing by the BMG Defendants (because there is none). (ECF 57 at 25-26.)

Joint Discovery Dispute Letter                                                                August 12, 2024

Plaintiff propounded extensive purported jurisdictional discovery on the BMG Defendants: two sets of RFPs on each BMG US and BMG France—***totaling over 75 requests***. A majority of these requests are facially overbroad and impermissibly seek merits discovery and discovery from BMG US. Thus, these requests are in contravention of the Court's dismissal order (ECF 57 at 11, 21-22), the Court's order staying discovery (ECF 56), and initial representations made by Plaintiff's counsel that it would only ask BMG to respond to less than twenty requests total. Although most of Plaintiff's jurisdictional discovery is improper—for example, seeking *any* document related to the OM Records venture with third parties, without limiting to the mark and its use (e.g., RFP Nos. 60-63[4])—the BMG Defendants sought to find an efficient way to provide Plaintiff with documents and identify any actual disputes. They believed they had reached an agreement regarding the approach on a meet and confer call only to have Plaintiff backtrack and send a draft of their portion of the letter days later.

Depositions are neither necessary nor appropriate for jurisdictional discovery.

**Defendants' Motions to Dismiss and Protective Order:** On February 15, the Defendants moved to dismiss. The French defendants moved on personal jurisdiction grounds and failure to state a claim. BMG US moved on the grounds that the complaint failed to state a claim. While the motions were pending, Plaintiff served its second set of requests for production ("Set Two"). The Defendants sought a protective order precluding discovery until the motions could be heard. (ECF 52.) In April, the Court granted the order and stayed all discovery. (ECF 56.) Notably, the Court described Set Two ***alone as "extensive."*** (*Id.* at 2.) In the same Order, the Court stated that "[i]f the Court grants Plaintiff's request to conduct jurisdictional discovery, that discovery *will be subject to limits*." (*Id.* at 4 (emphasis added).) And the Court did impose limits. (ECF 57 at 11, 21.)

In his June 17 order, Judge White found Plaintiff did not make out a prima facie case of personal jurisdiction over the French Defendants. Nevertheless, Judge White deferred ruling on the French Defendants'12(b)(2) motions and allowed "limited jurisdictional discovery" solely as to them. (ECF 57 at 11, 21.) Specifically, Judge White ordered "[f]urther inquiry into each of the *French Defendants' actions*"—not those of BMG US—"with regard to use and distribution of the OM Records mark in California or the United States." (*Id.* at 21 (emphasis added).)

**The Purported Jurisdictional Discovery:**

However, Plaintiff did not heed to any limits. Although Plaintiff's counsel initially represented that it would only ask BMG US and BMG France to respond to six and twelve RFPs, respectively, Plaintiff asked for BMG to respond to previously served Set Two and served a third set of requests for production ("Set Three"). The total number of requests for production exceed 75 requests that are outside of the scope of the Court's limitations.

Plaintiff also served a subpoena on David Hirshland, a former BMG US executive. That subpoena includes an additional 17 document demands.

**Plaintiff Unilaterally Ends the Meet and Confer Process**: The BMG Defendants responded on July 9 by contacting Plaintiff to discuss the scope of the requests given the Court's orders and its counsel's representations. (Exhibit F.) Accordingly, it is simply not true that BMG did not respond to the requests. In this regard, Plaintiff's claims that objections have been waived are also without merit. Set Two of the

---

[4] All citations to RFP Nos. are to those RRPs propounded on BMG France.

Joint Discovery Dispute Letter                                                                                           August 12, 2024

purported jurisdictional discovery was the subject of a motion for a protective order that was granted. And, Set Three has been the subject of the parties' on-going meet and confer efforts and agreements. No objections have been waived.

On July 29, the parties had a meet and confer call. During that call, Plaintiff and BMG discussed an approach to the discovery issues. Rather than serve formal discovery responses that would object to the 75 requests as improper at considerable unnecessary expense to BMG, Counsel for BMG agreed to send Plaintiff a list of documents or categories of documents that BMG France is willing to produce, and indicated that BMG France will likely be ready to begin a rolling production of such documents the following week, the week of August 4. However, BMG's counsel made no representation to produce any documents by August 2 as Plaintiff states in the letter. This approach was intended to help the parties understand where they are in agreement regarding scope, while minimizing the burden on both parties related to formal responses. And consequently, it would limit the issues that the parties may need to present to Your Honor, if any. While Plaintiff reserved the right to seek formal responses, they agreed to the approach.

Although BMG understood an agreement had been reached on the call, Plaintiff sent BMG this letter a few days later. The letter made various misstatements. The BMG Defendants were willing to, and in fact did proceed with the approach agreed upon. On August 2, counsel for BMG emailed Plaintiff the list of documents. (Exhibit G.)[5] Also, BMG France has been ready to produce and, indeed, commenced production of certain of those listed documents today.

On Sunday, August 4, Plaintiff unilaterally ended the meet and confer process without substantively responding to the proposed document list. Consequently, BMG does not know what Plaintiff's "final position" on the list, which is required to be included here by Your Honor's Standing Order.

**The Court Ordered Limited Jurisdictional Discovery Solely as to the French Defendants; BMG US is Not Subject to Jurisdictional Discovery**:

The dismissal order sets clear guideposts regarding what types of contacts would not support personal jurisdiction and the limited avenues that could lead to a finding of sufficient minimum contacts. Judge White rejected all of Plaintiff's claimed bases for exercising personal jurisdiction. He found, among other findings, that the use of California-based social medial and internet-streaming platforms does not establish express aiming (ECF 57 at 13-14); "OM Records' contract with Trackdilla and his subsequent commercial successes do not constitute minimum contacts" (*id.* at 15); and Loeffler's "vague involvement" "[d]oes [n]ot [r]elate to the French Defendants"[6] (*id.* at 17). Judge White, however, stated that "evidence that the French Defendants promoted the 'OM Records' brand within California in conjunction with Trackdilla could support a finding of purposeful direction here." (ECF 57 at 21.)

The requests are overly broad and impermissibly seek merits discovery. For example, certain requests seek "any" or "all" documents "related to the OM Records Enterprise" (e.g., RFP Nos. 50-51, 60-63, 66-68). Plaintiff fails to limit the requests to the mark and its use in California or the United States. The

---

[5] The BMG Defendants are mindful of the Court's standing order regarding the type of exhibits that should be included with these letters. Since the correspondence constitutes the BMG Defendants' response and Plaintiff is claiming that no response was made and that objections are somehow waived despite their agreement to the contrary, we thought the correspondence was important to the analysis.

[6] And to the extent Plaintiff seeks to impute Loeffler's action to BMG France, "Plaintiff would first need to make a showing that Loeffler's actions could be imputed to BMG US, and second that BMG US is an alter ego of BMG France." (Dkt. No. 57 at 17-18.)

broad framing of these requests is especially problematic when related to social media companies and internet platform because the Court already found these contacts do not establish express aiming. Plaintiff seeks to turn jurisdictional discovery into a merits based endeavor. This is impermissible.

The list of documents proposed by BMG's counsel is appropriately limited and relates to whether BMG France purposefully directed its activities toward California or the U.S. (Exhibit G.)

BMG US—which did not file a Rule 12(b)(2) motion—is simply not subject to jurisdictional discovery. Nevertheless, Plaintiff seeks copious discovery from BMG US in an attempt to establish personal jurisdiction over the French Defendants by impermissibly imputing BMG US' contacts in California or the US on them. The Court warned against "Plaintiff conflat[ing] the actions of all French Defendants with each other and with BMG US." (*Id.* at 21.) Failing to heed the Court's warning and focus on the French Defendants, Plaintiff continues its fishing expedition as to BMG US. This is improper.

Similarly improper is Plaintiff's deposition and documents subpoena to a former BMG US executive, David Hirshland, who was not involved in the venture. As the very allegations Plaintiff cites to in this letter demonstrate (SAC ¶¶ 43-46), the contact Mr. Hirshland had with BMG France related to the venture occurred because Plaintiff requested it. Plaintiff asked Mr. Hirshland to forward on their message to the proper people at BMG France. The emails in the SAC do not even remotely support some sort of deep involvement by Mr. Hirshland in the venture, let alone its contacts in the U.S.

**Conclusion**: The BMG Defendants request an order: (1) preventing Plaintiff from seeking discovery from BMG US; (2) preventing Plaintiff from taking Mr. Hirshland's deposition; and (3) limiting BMG France's production to those documents and categories of documents that BMG France outlined in Exhibit G.

***

Respectfully submitted,

          PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP

          By:      */s/ David M. Given*
                    David M. Given
                    *Attorney for Plaintiff*

          Dated:  August 12, 2024

          MANATT, PHELPS & PHILLIPS, LLP

          By:      */s/ Charles Weir*
                    Charles Weir
                    *Attorney for BMG Defendants*

          Dated:  August 12, 2024