UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

OM RECORDS, LLC,

    Plaintiff,

v.

OM DEVELOPPEMENT, SAS, et al.,

    Defendants.

Case No. 23-cv-04506-JSW (RMI)

**ORDER RE: JURISDICTIONAL DISCOVERY DISPUTES**

Re: Dkt. Nos. 70, 72

Now pending before the court are a series of disputes (*see* dkts. 70, 72) concerning jurisdictional discovery which Judge White has referred to the undersigned. *See* Order of June 17, 2024 (dkt. 57) at 21-22. The first of the two sets of disputes consist of requests by Plaintiff (Om Records, LLC) to denominate certain persons as proper custodians for search purposes, in addition to the three individuals proposed by Defendant Olympique de Marseille, SASP ("OMS"), and its subsidiary, Defendant OM Development, SAS ("OMD") (collectively referred to as, "the OM Defendants"); to deem the pertinent date range for responsive documents to begin September 1, 2017; to direct the OM Defendants to amend their written responses to comply with FRCP 34(b)(2) within 10 days; and, to direct the OM Defendants and their U.S. trademark attorneys (K&G Law, LLP) to produce responsive documents together with a privilege log within 15 days. *See* Ltr. Br. (dkt. 70) at 3. The second of the two sets of disputes boil down to requests by Plaintiff to deem certain persons proper custodians for search purposes; to direct Defendant BMG Rights Management, LLC ( "BMG U.S.A."), and Defendant BMG Rights Management, SARL ("BMG France") (collectively referred to as, "the BMG Defendants") to serve responses, without objections to Request for Proposal ("RFP") Sets 2 and 3 within 10 days; to direct the BMG

1  Defendants and a certain witness (Mr. David Hirshland, a BMG US executive) to produce
2  responsive documents, together with any privilege log, within 15 days; and, to direct the BMG
3  Defendants to produce Mr. Hirshland for a deposition. *See* Ltr. Br. (dkt. 72) at 3. Pursuant to
4  Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds these matters to
5  be suitable for disposition without oral argument. For the reasons stated below, Plaintiff's requests
6  are granted in part and denied in part.

7  The factual background of this case has been narrated in detail (*see* dkt. 57 at 2-7) and
8  those details do not need to be rehashed here. Suffice it to say that Plaintiff alleges trademark
9  infringement, unfair competition, and interference with economic relations against Defendants in
10 relation to "their alleged use of the OM Records trademark in connection with a short lived and
11 now defunct venture between the French Defendants" which "was intended to develop and
12 promote French and Afro-French artists . . . [which] ended in December 2022." *See* Ltr. Br. (dkt.
13 72) at 1, 3. The undersigned will, however, note the following elements of the procedural history
14 of this case that bear on some of the discovery disputes now before the court: (1) that all discovery
15 in this case was stayed pending the resolution of the Defendants' pending motions to dismiss (*see*
16 dkt. 56 at 4); and (2) while the motions to dismiss for failure to state a claim by the OM
17 Defendants and the BMG Defendants were resolved on June 17, 2024, Judge White deferred
18 ruling on the motions to dismiss – on personal jurisdiction grounds – by the OM Defendants and
19 BMG France (collectively referred to as, "the French Defendants") pending a period of
20 jurisdictional discovery (*see* dkt. 57 at 26-27). Accordingly, Plaintiff may take only jurisdictional
21 discovery at this time. *See id*. at 21-22; *see also id*. at 26 ("The Court refers the matter to a
22 randomly assigned Magistrate Judge for jurisdictional discovery."). It should also be noted that the
23 now-operative pleading – the SAC – has been filed but has not yet been responded to; and, the
24 French Defendants' dismissal motion on personal jurisdictional grounds – which is directed to the
25 FAC – remains pending while the Parties engage in jurisdictional discovery.

26 **<u>Letter Brief of August 7, 2024 (dkt. 70)</u>**

27 As mentioned, the first of the Parties' two sets of disputes are between Plaintiff and the
28 OM Defendants and can be reduced to four categories – disputes about proper custodians, the

2

1   proper timeframe regarding searches and document production, reportedly improper discovery
2   responses, and a dispute concerning a subpoena served on the OM Defendants' Pennsylvania-
3   based trademark counsel, K&G Law, LLP. *See* Ltr. Br. (dkt. 70) at 1-3.

### *Custodians*

Plaintiff seeks to include custodial searches for Jacques-Henri Eyraud (former President of OMS and OMD) and Frank McCourt (both OM Defendants' sole owner). *Id*. at 1. The OM Defendants submit that they "have [already] identified three employees as custodians who were most involved in the OM Records venture, including the negotiation of the OM Records term sheet and the marketing and distribution of the label." *Id*. at 4. The OM Defendants add that Plaintiff's counsel recently agreed to start with these custodians and revisit the issue after document production progresses, however, Plaintiff now nevertheless seeks discovery from OMS's former highest-ranking officer, Mr. Eyraud, and OMS's ultimate, beneficial owner, Mr. McCourt (who is not a party to this action or to the OM Records term sheet). *Id*. Relying on allegations set forth in the SAC, Plaintiff contends that the OM Records venture was launched "following three years of dialogue between Mr. McCourt and a senior BMG US executive," and that "these two individuals, acting on behalf of their respective organizations, were responsible for conceiving and launching the OM Records venture, and did so at least in part [while] in the U.S. and California." *Id*. at 3. Plaintiff adds that Mr. McCourt (who has substantial connections to this State) republished a certain press release about this venture on his "McCourt Global" website (which is his private family company with an office in Los Angeles) *Id*. Further, Plaintiff notes that in mid-2020, the 50/50 partnership underlying the OM Records venture was memorialized in a partnership agreement that was signed by Mr. Eyraud on behalf of OMS and that "[h]e is also the sole signatory on the assignment of the infringing OM Records trademark from OMS to OMD." *Id*. (citing SAC ¶ 11).

In short, Plaintiff argues that "Mr. McCourt's participation in the OM Records venture is particularly relevant to the jurisdictional inquiry [because] [h]e is located here [in California]." *Id*. As to Mr. Eyraud, Plaintiff submits that "[h]is signature is all over the core documentation. And, more likely than not, he directly communicated with Mr. McCourt. And if Mr. Eyraud did

3

1   communicate with Mr. McCourt about Defendants' venture while Mr. McCourt was in the U.S.,
2   that would demonstrate jurisdictional contacts here." *Id*. As to Mr. McCourt, Plaintiff's reasoning
3   seems attenuated – at best. Judge White held, for personal jurisdiction purposes, that: (1)
4   Defendants' alleged knowledge of Plaintiff's business does not create express aiming; (2) that
5   Defendants' use of California-based social media, music, and video channels does not constitute
6   express aiming; and, (3) that even Defendants' deal with California-based Trackdilla does not
7   show express aiming towards the forum. *See* Order (dkt. 57) at 12-16. Judge White also found that
8   the involvement of Mr. McCourt does not relate to the French Defendants. *Id*. at 17-18 ("McCourt
9   owns the Olympique de Marseille soccer club, which is a separate legal entity from OM
10  Developpement. [] McCourt did not sign the partnership agreement. Plaintiff makes no showing
11  that McCourt is personally responsible for Olympique de Marseille's conduct, or that McCourt's
12  conduct should be imputed to Olympique de Marseille. At best, there is an attenuated connection
13  between these nonparty individuals and the foreign defendants, but this connection does not
14  demonstrate that the French Defendants purposely directed their activities towards the United
15  States." (citing *Uhlig v. Fairn & Swanson Holdings, Inc.*, No. 20-CV-00887-DMS-MSB, 2020
16  WL 6872881, at *3 (S.D. Cal. Nov. 23, 2020) (ownership and control of nonresident defendant
17  alone do not establish the requisite level of control for alter ego jurisdiction)). *Id*. at 18.
18          While Plaintiff has added some allegations to the SAC in this regard (the plausibility of
19  which has yet to be evaluated), the OM Defendants contend that "Plaintiff's conclusory (and
20  baseless) allegation in the SAC that Mr. McCourt was 'directly involved in the operation' of OM
21  Records after its launch (SAC at ¶16) does not alter Judge White's reasoning or entitle Plaintiff to
22  his files." *See* Ltr. Br. (dkt. 70) at 4-5. The OM Defendants also argue that requiring them to
23  search the files of Mr. Eyraud and Mr. McCourt would be unduly burdensome and
24  disproportionate to the needs of this action, and that it will not lead to discovery of information
25  that Judge White ruled is relevant to the jurisdictional inquiry at hand. *Id*. at 4. Moreover, the OM
26  Defendants argue that "Mr. McCourt should not be a custodian because he is not an officer,
27  director, or employee of either of the OM Defendants and thus his documents are not in the
28  possession, custody, or control of either entity as required under Rule 34," and, that "neither Mr.

4

1    Eyraud nor Mr. McCourt [were] substantively involved in the OM Records venture: (1) although
2    Mr. Eyraud signed a handful of relevant agreements, that demonstrates nothing more than that he
3    signed agreements as a senior officer; and (2) as Judge White explicitly ruled, Mr. McCourt's
4    'alleged participation' (involvement in pre-launch discussions with a BMG US executive) does
5    not create minimum contacts with the United States and is not attributable to any of the French
6    Defendants." *Id*. (internal quotations and citation omitted).

7          In short, the undersigned finds that Plaintiff has failed to show any likelihood that either of
8    its proposed custodians would be in possession of relevant documents which *would not* be
9    expected to be produced through the custodians that "[t]he OM Defendants have [already]
10   identified," to wit, the "three employees [] who were most involved in the OM Records venture,
11   including the negotiation of the OM Records term sheet and the marketing and distribution of the
12   label." *Id*. at 4. Also, Plaintiff's portion of the Letter Brief does not address the OM Defendants'
13   contentions regarding proportionality, or the suggestion that neither Mr. Eyraud nor Mr. McCourt
14   had any significant involvement in the OM Records venture.

15         When moving to compel discovery, the moving party has the burden of demonstrating
16   relevance. *See e.g., Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Beyond that,
17   in order to succeed on a motion to compel, a moving party bears the burden to show that it has
18   satisfied proportionality and other requirements of Rule 26. *See Rodriguez v. Barrita, Inc.*, No. 09-
19   04057 RS-PSG, 2011 U.S. Dist. LEXIS 134079, at *4 (N.D. Cal. Nov. 21, 2011). In light of this,
20   courts are required to limit discovery if its burden or expense outweighs its likely benefit; this is
21   "the essence of proportionality," a frequently ignored or overlooked discovery principle. *In re*
22   *Glumetza Antitrust Litig.*, 2020 U.S. Dist. LEXIS 113361, at *31-32 (citing *Apple Inc. v. Samsung*
23   *Elecs. Co.*, No. 12-cv-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493, at *34-36 (N.D. Cal.
24   Aug. 14, 2013)). Thus, for the reasons stated by the OM Defendants, and also because Plaintiff has
25   not demonstrated any likelihood that either of its proposed custodians would be in possession of
26   any evidence relevant to the jurisdictional inquiry at hand that would not be expected to be
27   produced through the three employee custodians already-identified by the OM Defendants,
28   Plaintiff's request to compel the OM Defendants to include Mr. Eyraud and Mr. McCourt as

1  custodians is **DENIED**.

*Timeframe*

3  The Parties also dispute the proper timeframe to which the document searches would be limited. *See* Ltr. Br. (dkt. 70) at 2, 5. Plaintiff seeks a date range that begins in September of 2017 because of the suggestion that this "date is consistent with the press release announcing the Partnership Agreement, reciting that conversations between the 'architects' of the OM Records venture (Mr. McCourt and another U.S. citizen) were underway three years prior to the public announcement of that venture" – Plaintiff believes that "[t]hese communications, which more likely than not include negotiation over the terms and conditions of the venture's Partnership Agreement and use of the OM Records name and mark in the U.S., as well as the drafting and transmission to U.S. publications of Defendants' press release announcing their OM Records venture [], are relevant to jurisdictional contacts here." *Id.* at 2. Plaintiff adds that "if the Defendants were discussing Plaintiff during the period before the public announcement of their OM Records venture, that would constitute further proof of their 'targeting' here in the U.S." *Id.* As an initial matter, this approach appears to misapprehend the sort of contact with the forum that would establish jurisdiction. *See* Order (dkt. 57) at 12-16, 17-21

In any event, OM Defendants submit that Plaintiff's proposed six-year period is unnecessarily long for present purposes and that, given that the OM Records venture was launched in September of 2020, a January 1, 2020, starting point "is sufficient to capture any relevant discussions between OMS and BMG France (the parties to that agreement)." Ltr. Br. (dkt. 70) at 5. The OM Defendants add that "Judge White held that Mr. McCourt's pre-launch involvement in conceiving the record label (before the term sheet was signed and before the OM Records name was ever used) is not a basis for exercising personal jurisdiction over the OM Defendants," and that because "Judge White similarly held that the 'individualized targeting' theory is not sufficient," Plaintiff's inquiry into the OM Defendants' knowledge of Plaintiff's forum connections is unavailing. *Id.* (citing Order (dkt. 57) at 12-13). Nevertheless, the OM Defendants have agreed to re-consider their position on the timeframe issue if, based on the review of the documents that will be produced, Plaintiffs continue to consider the starting point of January 1,

6

2020, too restrictive. *Id*. In this regard, Plaintiff's argument about what the earlier starting point might yield seems to rest on a speculative foundation rather than on a concrete basis. The court finds merit in the OM Defendants' proposed approach that the issue should be revisited if Plaintiff can later articulate a concrete argument as to why – as a matter of fact (rather than mere speculation) – a date range that starts on January 1, 2020, is too restrictive. Accordingly, Plaintiff's request to compel the OM Defendants to use a starting point earlier than January 1, 2020, is **DENIED**.

*The OM Defendants' Responses to Plaintiff's Document Requests*

In the most general of terms, Plaintiff complains that the OM Defendants have provided reportedly improper responses to a large but unspecified number of Plaintiff's document requests. *See* Ltr. Br. (dkt. 70) at 3. In essence, Plaintiff only states that "the OM Defendants fail to specify what they are withholding," and that "their amended responses repeatedly and substantively alter the nature of the request, raising the standard for discoverable material under Rule 26." *Id*. Plaintiff then adds that "[t]he OM Defendants must answer the discovery actually served on them, not the discovery they wish was served on them, rewriting the requests and taking it upon themselves to determine what documents relate to their contacts here." *Id*. Plaintiff's portion of the letter brief goes no further in identifying any specific document requests and responses at issue; instead, Plaintiff has attached a 51-page document (*see* Exh. A (dkt. 70-1) at 2-52) containing what appears to be the entirety of the OM Defendants' amended responses and objections to Plaintiff's second set of requests for production with the expectation that the court might sift through the entirety of that document in order to piece together specific objections and responses that may or may not be responsive to each of the 32 underlying document requests (*i.e.*, RPF Nos. 52-84).

For their part, the OM Defendants state that they have agreed to search for and produce any responsive, non-privileged documents for eight requests—Nos. 56, 62, 64, 69, 74-76, and 84, and that "[a]s for others — Nos. 51-55, 59-61, 63, 65-68, and 70-71 — the OM Defendants are willing to search for and produce any non-privileged documents to the extent that they relate to the scope of discovery as framed by Judge White — *i.e.*, 'the French Defendants' . . . use and

distribution of the OM Records mark in California or the United States.'" *Id.* at 5 (quoting Order (dkt. 57) at 21) (Judge White's order permitting jurisdictional discovery established the following contours for the limited discovery into jurisdiction: "[f]urther inquiry into each of the French Defendants' actions with regard to use and distribution of the OM Records mark in California or the United States could yield evidence that the French Defendants did target California or the United States, rather than merely France and other Francophone countries. In particular, evidence that the French Defendants promoted the "OM Records" brand within California in conjunction with Trackdilla could support a finding of purposeful direction here. The Court finds that limited jurisdictional discovery is appropriate.").[1]

It clearly appears that Plaintiff is not engaging the OM Defendants in good faith efforts to narrow or resolve discovery issues without having to resort to court intervention. First, Plaintiff's portion of the letter brief is silent as to the eight requests for production that the OM Defendant claim they have <u>agreed</u> to search for and produce as to any non-privileged materials. Second, Plaintiff's portion of the letter brief makes no effort to discuss or address the OM Defendants' assertion that their responses and objections to the remainder of Plaintiff's requests for production state that they are willing to search for and produce all non-privileged materials so long as they do not fall outside the contours of jurisdictional discovery, as set forth in Judge White's Order of June 17, 2024. Third, Plaintiff's generalized request for the court to sift through dozens of requests and responses lacks the requisite specificity to satisfy the legal requirements applicable to a request to compel discovery. *See e.g., Traverso v. City of Enumclaw*, 2012 U.S. Dist. LEXIS 98461, *6 (W.D. Wash., Jul. 16, 2012) ("A motion to compel should identify what discovery requests are in dispute, <u>explain why the material requested is discoverable</u>, and reflect the parties' reasonable efforts to narrow their disputes without court intervention.").

---

[1] Because the contours of the limited jurisdictional discovery currently underway were so clearly set forth by Judge White's June 17th Order, the court expects that counsel, working together cooperatively and in good faith, will be able to resolve – or at least substantially narrow – any future disputes without the need for court intervention. However, the court will forewarn the Parties and their counsel that in the event of any future requests to compel that appear to the court to have not been substantially justified (as seems to be the case here), the court will invite the prevailing party – pursuant to Fed. R. Civ. P. 37(a)(5) – to submit a request for an award of expenses incurred in connection therewith.

1       This failure to describe and justify the allegedly missing discovery that Plaintiff wishes to
2  compel is demonstrative of the fact that it has not met its burden of ***showing*** relevance and
3  proportionality. *See Apple Inc. v. Samsung Electronics Co.*, Case No. 12-CV-0630-LHK (PSG),
4  2013 U.S. Dist. LEXIS 91450, 2013 WL 3246094, at *21 n.84 (N.D. Cal. 2013) ("In this district,
5  the party moving to compel has the burden of showing relevance."); *see also Soto v. City of*
6  *Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) ("[I]n general the party seeking to compel
7  discovery bears the burden of showing that his request satisfies the relevance requirement of Rule
8  26."); *Sakas v. Settle Down Enterprises. Inc.*, 90 F. Supp. 2d 1267, 1282-83 (N.D. Ga. 2000)
9  (denying for lack of specificity a motion to compel discovery which was phrased in general
10 terms); *see also Arons v. Lalime*, 167 F.R.D. 364, 368 (W.D.N.Y. 1996) (reiterating that it had
11 previously denied plaintiff's motion to compel discovery primarily because it had failed to
12 identify, with specificity, the discovery requests and responses at issue); *James v. Lee*, 2021 U.S.
13 Dist. LEXIS 103726, *12 (S.D. Cal., June 2, 2021) ("The Court cannot compel Defendant to
14 produce the discovery Plaintiff seeks, for Plaintiff has not identified with any specificity what
15 discovery he has requested Defendant to produce."); *Johnson v. Northwest Airlines, Inc.*, 2009
16 U.S. Dist. LEXIS 30731, 2009 WL 839044, at *2 (N.D. Cal., Mar. 30, 2009) ("Although the
17 burden on parties requesting discovery is low, they must meet a threshold of relevance that is
18 beyond speculation; litigants seeking to compel discovery must describe with a reasonable degree
19 of specificity the information they hope to obtain and its importance to their case."); *see also*
20 *Temblay v. OpenAI, Inc.*, 2024 U.S. Dist. LEXIS 87023, *5-6 (N.D. Cal., May 14, 2024) (same).
21 For these reasons, as well as those stated by the OM Defendants (*see* Ltr. Br. (dkt. 70) at 5),
22 Plaintiff's document requests are **DENIED**. As stated above (*see* n.1 supra), the court expects any
23 forthcoming discovery disputes to either be resolved informally, or to be narrowed as a result of
24 good-faith meet and confer efforts, to be substantially justified, and to be presented properly in
25 accordance with the standards for articulating discovery disputes set forth above.

*K&G Law Subpoena*

27      Plaintiff has issued and served a subpoena for documents on the OM Defendants'
28 Pennsylvania-based trademark counsel, K&G Law. *See* Ltr. Br. (dkt. 70) at 3. Plaintiff submits,

9

again in general terms, that "K&G was focal point in the U.S. for Defendants' effort to interfere with Plaintiff's trademark rights here — an effort eventually abandoned when the E.U. Intellectual Property Office declared the French trademark registration used to gain priority in the U.S. to be filed in bad faith." *Id*. Plaintiff then adds that "K&G earlier indicated to Plaintiff's Pennsylvania counsel that it had identified 98 non-privileged documents that it expected to produce," but that "[s]ince then, [] K&G has failed and refused to do so, presumably at its former clients' direction." *Id*. However, what is fatal to Plaintiff's request is that its portion of the letter brief is silent as to the following information: (1) the types documents sought by the subpoena; (2) any explanation as to their relevance to the scope of jurisdictional discovery currently underway; (3) any showing as to their proportionality to the needs of the case; and, perhaps most importantly, (4) any specific information about the face of the subpoena as to <u>where</u> compliance is required, given that Fed. R. Civ. P. 45(d)(2)(B)(i) directs the serving party to file motions to compel in "the district where compliance is required," and in light of the fact that some courts analyze the appropriate place for a subpoena dispute based on the location identified on the face of the subpoena, even if it is not where compliance is actually required.[2]

The OM Defendants respond by suggesting that the subpoena is improper because it is directed at materials that are almost exclusively privileged, and that it concerns a subject that Judge White has already rejected as being a basis for jurisdiction (to wit, OMD's abandoned U.S. trademark application) (citing Order (dkt. 57) at 20-21). *Id*. at 5. Nevertheless, the OM Defendants report that K&G has timely responded to the subpoena, and that "it is counsel's understanding that K&G is willing to produce any responsive, non-privileged documents, notwithstanding its objections, to avoid unnecessary motion practice." *Id*.

Once again, it appears that the OM Defendants' responses are falling upon deaf ears. Put another way, it appears that Plaintiff is not engaging in good faith efforts to narrow or resolve its

---

[2] *See e.g., Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD (VKD), 2020 U.S. Dist. LEXIS 197778, 2020 WL 6262349, at *2 (N.D. Cal. Oct. 23, 2020) ("the Court concludes that under the plain language of Rule 45(d), Apple's motion to compel is properly filed in this district, as it is the place where compliance is required on the face of the subpoena, even if that place of compliance is not proper under Rule 45(c).").

10

1  discovery disputes, or at least to wait until they are ripe before dumping them onto the court's lap
2  in a raw and undeveloped form. The subpoena dispute is raw and undeveloped because Plaintiff
3  has provided no detail whatsoever about the information it seeks through the subpoena or about
4  the necessary details for a court to determine whether any enforcement of the subpoena ought to
5  take place in this district in the first place. Then there is the fact that the OM Defendants report
6  that "K&G *is willing* to produce any responsive, non-privileged documents, notwithstanding its
7  objections, to avoid unnecessary motion practice" (*id.*), which stands in direct conflict to
8  Plaintiff's statement that K&G will not produce whatever unspecified documents are sought
9  through this subpoena, "presumably" at the direction of the OM Defendants (*id.* at 3). The entire
10 purpose underlying the joint-filing letter brief approach to presenting discovery disputes has been
11 undermined by the above-described disconnect in the Parties' arguments. *See Synopsys, Inc. v.*
12 *Ubiquiti Networks, Inc.*, 2018 U.S. Dist. LEXIS 231138, *5 (N.D. Cal. April 9, 2018) ("The meet-
13 and-confer and joint-letter-brief processes are not meant to be check-the-box exercises that the
14 parties rush through so they can file discovery motions with the court as quickly as possible."); *see*
15 *also Synopsys*, 2018 U.S. Dist. LEXIS 85255, *5 (N.D. Cal. May 21, 2018) ("[O]ne of the central
16 purposes of the joint-letter-brief process [is] so that the parties can see each other's positions and
17 arguments, can respond to them, can re-respond to the responses, etc., and thereby (1) try to find
18 areas of compromise and work out their disputes amongst themselves and (2) narrow, sharpen, and
19 focus the issues they cannot resolve before they present those issues to the court."). Going
20 forward, if there are to be any further discovery disputes, the court expect a substantially better
21 effort from Plaintiff in the areas of narrowing its disputes and actually addressing the arguments
22 presented by the other party to the discovery dispute. For the reasons stated above, Plaintiff's
23 request to "[d]irect the OM Defendants and K&G to produce responsive documents together with
24 a privilege log no later than 15 days from the date of the Court's order" is **DENIED**.

25                    **Letter Brief of August 12, 2024 (dkt. 72)**

26 The second of the Parties' two sets of disputes are between Plaintiff and the BMG
27 Defendants and also can be reduced to four categories: disputes about proper custodians for search
28 purposes; disputes about reportedly improper discovery responses; disputes related to a subpoena

11

1    addressed to a former BMG US executive; and, a dispute regarding Plaintiff's desire to take a

2    deposition from that same former BMG US executive. *See* Ltr. Br. (dkt. 72) at 1-3.

3            Initially, the court will address the BMG Defendants' resistance to Plaintiff's efforts to

4    rope BMG US into the jurisdictional inquiry. *See id*. at 5-6. In this regard, the BMG Defendants

5    contend that the limited jurisdictional discovery currently underway should only be applicable to

6    the French Defendants, and that BMG US is not subject to jurisdictional discovery. *Id*. In this

7    regard, the undersigned will note two things. First, Judge White referred "*the determination of the*

8    *scope of jurisdictional discovery* and potential discovery matters that may arise" to the

9    undersigned. *See* Order (dkt. 57) at 21-22 (emphasis supplied). Second, as to Plaintiff's allegations

10   that Mr. McCourt (the American owner of the Olympique de Marseille soccer team) conceived of

11   the idea for the infringing record label, and as to Mr. John Loeffler's involvement (the BMG US

12   executive who was reportedly responsible for conceiving and launching Defendants' venture and

13   who was reportedly bound by BMG France, via the venture's Partnership Agreement, to stay

14   involved in the venture), Judge White held that "[i]n order for Loeffler's vague involvement to be

15   imputed to BMG France, Plaintiff would first need to make a showing that Loeffler's actions

16   could be imputed to BMG US, and second that BMG US is an alter ego of BMG France." *See*

17   Order (dkt. 57) at 17-18. The upshot of these two observations is that the undersigned will not

18   accede to the BMG Defendants' request to exclude BMG US from the jurisdictional discovery

19   process. However, neither shall Plaintiff have the right to exceed the contours of jurisdictional

20   discovery set forth in Judge White's June 17th Order such as to venture beyond those contours as

21   it seems to be wont to do given the overbreadth – and at times patently irrelevant phrasing – of its

22   requests for production (*see* Exh. A (dkt. 72-1) at 7) (*see e.g.*, RFP No. 50, asking for documents

23   reflecting the local of consumers who viewed, streamed, purchased, and/or downloaded any and

24   all Om Records Enterprise songs, albums or music videos platforms from 2020 to present –

25   without regard for their global location, or any other limitation pertinent to the issue of personal

26   jurisdiction over the French Defendants; *see also* RFP No. 52, asking for all documents showing

27   the extent of the Olympique de Marseille football club's fanbase in California from 2020 to

28   present; *see also* RFP No. 53, seeking all documents relating to the Olympique de Marseille

1  football club's San Francisco or Los Angeles fan clubs from 2017 to present). Like these

2  examples, many of Plaintiff's requests seem to be either too broadly phrased, or patently irrelevant

3  to any issue in the case – let alone the issue of personal jurisdiction over the French Defendants.

4  Thus, the undersigned will grant Plaintiff limited leeway to take *some* jurisdictional

5  discovery from BMG US – but only to the extent that would be necessary to make a showing (if

6  possible) that Mr. Loeffler's actions should be imputed to BMG US, and that BMG US should be

7  considered as an alter ego of BMG France. Within these limits, Plaintiff's request to deem Mr.

8  John Loeffler and Mr. David Hirshland (two BMG US executives that Plaintiff contends were

9  involved in the venture associated with the infringing mark) as proper custodians for search

10 purposes is **GRANTED**.

11 Further, subject to the limitations set forth below, Plaintiff's request to deem Mr. Sylvain

12 Gazaignes (a BMG France executive who reportedly signed the venture's Partnership Agreement

13 and aided Mr. Hirshland in coordinating the venture's response, and to whom Mr. Loeffler

14 reported on matters relating to the venture), and Mr. Emilie Hauck (a BMG France employee who

15 was reportedly made the Artistic Director for the infringing record label who reported to Mr.

16 Gazaignes and was reportedly based in the OM Defendants' offices in Marseille) is **GRANED**.

17 Thus, to the extent stated herein, the BMG Defendants' request to prevent Plaintiff from seeking

18 *any* discovery from BMG US is **DENIED**. Furthermore, because the jurisdictional inquiry is

19 limited, the undersigned finds that paper discovery is sufficient for present purposes and that

20 Plaintiff has not made a showing as to why Mr. Hirshland must be deposed at this time.

21 Accordingly, the BMG Defendants' request to prevent Plaintiff from taking Mr. Hirshland's

22 deposition is **GRANTED**.

23 As to the scope of the documents that Plaintiff can request, the BMG Defendants submit

24 that Plaintiff's discovery should be limited to the categories of documents set forth in Exhibit G

25 (*see* Exh. G (dkt. 72-1) at 50-51). Having reviewed Exhibit G and the Parties' submissions in this

26 regard (Ltr. Br. (dkt. 72) at 1-6), the BMG Defendants' request is **GRANTED in part** and

27 Plaintiff's discovery requests to the BMG Defendants shall be limited to the categories set forth in

28 Exhibit G, as well as discovery that would be necessary for Plaintiff to make a showing that any

13

jurisdictionally-significant action (as described in Judge White's June 17th Order) on the part of any BMG US officer or executive is able to be imputed to BMG US, and if so, any discovery that might show that BMG US is an alter ego of BMG France.

Going forward, if Plaintiff wishes to take discovery beyond the parameters described herein, or if a dispute arises otherwise, the Parties are **ORDERED** to meet and confer in a *meaningful* fashion such as to resolve or narrow their discovery disputes to distinct, discrete, and genuine issues, such that they can be articulated properly in a 5-page letter brief in accordance with the standards set forth herein. If such a letter brief is to be filed, Plaintiff is specifically admonished to take care to carefully address any of Defendant(s)' contentions, concessions, and arguments such as to avoid needlessly bringing unripe or undeveloped disputes before the court (*see* n.1 supra).

**IT IS SO ORDERED.**

Dated: September 6, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge